UNITED STATES *v.* ST. PAUL, MINNEAPOLIS &
MANITOBA RAILWAY COMPANY ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
NINTH CIRCUIT.

No. 75.  Argued January 15, 16, 1918.—Decided June 3, 1918.

The Act of March 2, 1896, c. 39, 29 Stat. 42, limiting the time within
which suits may be brought to vacate land patents, contains a proviso
"that no suit shall be brought or maintained, nor shall recovery
be had for lands or the value thereof, that were certified or patented
in lieu of other lands covered by a grant which were lost or relin-
quished by the grantee in consequence of the failure of the Govern-
ment or its officers to withdraw the same from sale or entry." *Held,*
that the proviso was a curative measure referring only to lands
patented before the enactment and was no protection for a patent
procured afterwards by fraud.

The general principle underlying the strict construction of statutes
of limitation as applied to the Government, viz., that the public
interest should not be prejudiced by negligence or default of public
officials, applies with peculiar force in the construction of a provi-
sion which operates to bar absolutely the recovery of the value of
land as well as the land itself, in favor of the immediate recipient
of a fraudulent patent no less than a *bona fide* purchaser.

In the present case, resort to this principle and to the legislative
history of the proviso, added to its apparent independence and the
extraordinary and unreasonable effects of applying it to future
cases, overweigh the general rule of prospective construction and
the fact of immediate association with prospective provisions.

The equity of a statute barring equitable relief for fraud and mistake
is on the side of a strict construction.

The remarks of the chairman of a congressional committee, referring
to matters of common knowledge in explanation of an amendment
offered by him to a bill which he has previously reported, may be
considered as throwing light upon the subject-matter of the amend-
ment, for the purpose of solving an ambiguity.

225 Fed. Rep. 27, reversed.

THE case is stated in the opinion.

*Mr. Assistant Attorney General Kearful* for the United States.

*Mr. I. Parker Veazey, Jr.,* with whom *Mr. E. C. Lindley* was on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This was a suit by the United States to annul a patent issued June 24, 1907, to the St. Paul, Minneapolis & Manitoba Railway Company (referred to below as the Manitoba Company), for certain lands in the State of Montana, upon the ground of fraud and mistake—fraud on the part of the agents of the company in representing that the land was non-mineral in character, and mistake on the part of the officers of the Land Department in failing to notify the register and receiver of the local land office that the lands had been classified as mineral and the classification sustained by the Secretary of the Interior under the Act of February 26, 1895, c. 131, 28 Stat. 683. The District Court granted a motion to dismiss the bill upon the ground that the suit was barred by the proviso of § 1 of the Act of March 2, 1896, c. 39, 29 Stat. 42; and its decision was affirmed by the Circuit Court of Appeals, 225 Fed. Rep. 27.

It appears that by Act of March 3, 1857, c. 99, 11 Stat. 195, certain public lands were granted to the Territory of Minnesota for the purpose of aiding in the construction of railroads, and the Manitoba Company afterwards succeeded to the rights and privileges of the Territory under the granting act. At the time of the grant the Missouri River formed the western boundary of the Territory; but in the following year the State of Minnesota was admitted into the Union, with its western boundary fixed on a line some distance east of that river (Act of May 11, 1858, c. 31, 11 Stat. 285); the excluded land being

left to become a part of the Territory of Dakota (Act of March 2, 1861, c. 86, 12 Stat. 239), afterwards admitted as the States of North Dakota and South Dakota. After the admission of Minnesota, the Land Department, in the administration of the land grant, rejected the claim of the Manitoba Company to lands within the limits of the grant but without the limits of that State, and recognized the rights of settlers and purchasers to Dakota lands within the limits of the grant. In *St. Paul, Minneapolis & Manitoba Ry. Co.* v. *Phelps* (1890), 137 U. S. 528, this court set aside the departmental construction and sustained the company's claim to the Dakota lands. To obviate the resulting hardships to settlers and patentees, Congress passed an Act of August 5, 1892, c. 382, 27 Stat. 390, providing that the Secretary of the Interior should cause to be prepared and delivered to the Manitoba Company a list of the lands claimed by purchasers or occupants, and that the company should be permitted to select in lieu of these "an equal quantity of non mineral public lands, so classified as non mineral at the time of actual Government survey . . . not reserved and to which no adverse right or claim shall have attached or have been initiated at the time of the making of such selection lying within any State into or through which the railway owned by said railway company runs, to the extent of the lands so relinquished and released." The Montana lands here in question were selected by the company in March, 1906, and patented to it in June, 1907, in lieu of Dakota lands relinquished by the company pursuant to its acceptance of the Act of 1892.

There is no question but that the bill of complaint sets forth sufficient grounds of fraud and mistake to warrant the annulment of the patent, were it not for the bar set up under the Act of March 2, 1896; and whether that bar applies is the sole matter presented for decision upon this appeal.

The act is entitled: "An Act to provide for the extension of the time within which suits may be brought to vacate and annul land patents, and for other purposes," and its first section reads as follows: "*Be it Enacted* . . . That suits by the United States to vacate and annul any patent to lands heretofore erroneously issued under a railroad or wagon road grant shall only be brought within five years from the passage of this Act, and suits to vacate and annul patents hereafter issued shall only be brought within six years after the date of the issuance of such patents, and the limitation of section eight of chapter five hundred and sixty-one of the acts of the second session of the Fifty-first Congress and amendments thereto[1] is extended accordingly as to the patents herein referred to. But no patent to any lands held by a bona fide purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed: *Provided,* That no suit shall be brought or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the Government or its officers to withdraw the same from sale or entry."

Laying aside other questions raised by the Government, we have reached the conclusion that, having regard to the general principle which requires a strict construction to be given to legislation in derogation of the public right, and in view of the legislative history of this particular enactment, the proviso must be given the effect of a curative measure confined to lands theretofore patented, and not granting dispensation for frauds or mistakes thereafter occurring.

It will be observed that the proviso is not a mere statute of limitation, but an absolute bar of suits by the United

[1] Act of March 3, 1891, c. 561, as amended by Act of the same date, c. 559 (26 Stat. 1099, 1093).

States; not merely of suits to vacate and annul patents, but of suits to recover either the land or the value thereof; not merely in favor of *bona fide* purchasers, but also of the immediate recipient of an unlawful certification or patent. The general principle of public policy applicable to all governments, that the public interest should not be prejudiced by the negligence or default of public officers, which underlies the rule of strict construction for statutes of limitation, applies with peculiar force to a statute of this character. *United States* v. *Knight,* 14 Pet. 301, 315; *Gibson* v. *Chouteau,* 13 Wall. 92, 99; *United States* v. *Thompson,* 98 U. S. 486, 489; *Fink* v. *O'Neil,* 106 U. S. 272, 281; *United States* v. *Nashville, Chattanooga & St. Louis Ry. Co.,* 118 U. S. 120, 125; *United States* v. *Whited & Wheless,* 246 U. S. 552.

If the language of the proviso stood alone: "That no suit shall be brought or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the Government or its officers to withdraw the same from sale or entry," it hardly would be questioned that the rule of strict construction would confine its effect to past cases presumably known to the lawmaker. Aside from a nice grammatical criticism based upon the use of the imperfect tense, full effect can be given to its language by treating it as a validation of the title of lieu lands theretofore certified or patented under the conditions mentioned. The very particular specification of the circumstances under which it was to apply, with resulting narrowness of its scope, tends to negative the inference that it was designed to lay down a general policy for the future. It conveys rather the impression of a curative measure, upon which the general presumption that legislation is intended to operate prospectively and not retrospectively can have little if any bearing.

It is said that this view is untenable because in the former part of the section specific reference is made to patents *"heretofore* erroneously issued" and to *"*patents *hereafter* issued," and if Congress had intended to limit the proviso to lands certified or patented before the passage of the act it would have used appropriate and specific language for the purpose. The suggestion has weight, but we cannot regard it as determinative, in view of opposing considerations. Looking at the section as a whole, it will be seen that the proviso expresses a thought so different from what precedes, that it seems almost like a separate provision, inserted here for convenience, and without much regard for structural conformity with the context.

This impression is confirmed when we review the legislative history of the measure.

By an Act of March 3, 1887, c. 376, 24 Stat. 556, Congress had directed the Secretary of the Interior immediately to adjust, in accordance with the decisions of this court, railroad land grants theretofore unadjusted, with the object of restoring to the United States the title to lands erroneously certified or patented under such grants, saving the entries of *bona fide* settlers erroneously canceled on account of a railroad grant and the rights of *bona fide* purchasers from the grantee company of lands erroneously patented. The work of adjustment proved to be one of great magnitude, and it had not been completed at the time when the act under consideration was passed. Meanwhile the Acts of March 3, 1891 (c. 561, § 8, 26 Stat. 1095, 1099; c. 559, 26 Stat. 1093), had provided that suits by the United States to vacate and annul any patent theretofore issued should only be brought within five years thereafter (that is, within five years after March 3, 1891). Not long before the end of the period thus fixed, beyond which lands could not be recovered even if the investigation in progress under the 1887 Act should

disclose that they had been erroneously certified or patented, the President transmitted to Congress a special message, under date January 17, 1896 (House Doc. No. 151, 54th Cong., 1st sess.), explaining the situation and recommending that the Act of 1891 should be so amended as not to apply to suits brought to recover title to lands certified or patented on account of railroad or other grants. This was referred to the Committee on Public Lands of the House of Representatives, and that committee, not acceding to the particular recommendation of the message, reported a bill intended to give five years' additional time for bringing to a conclusion the pending investigation and adjustment, but providing that as to *bona fide* purchasers even this extension should not apply (Report No. 253, House of Representatives, 54th Cong., 1st sess.; 28 Cong. Rec. Pt. 2, p. 1761). The first section of the bill as reported, with which alone we are concerned, is given verbatim in the margin.[1] As will be observed, it contained nothing corresponding to what is now the proviso.

The proviso was inserted, upon the motion of Mr. Lacey, chairman of the committee and in charge of the bill, while it was under consideration in the House, for the plainly declared purpose of providing for a specific case referred to in the debate as having arisen in the State of Nebraska, where lieu lands to the extent of more than 200,000 acres had been certified or patented to a railroad company to make good the loss of an equal acreage of lands within the limits of the grant due to an erroneous

---

[1] "Be it enacted," etc., "That suits by the United States to vacate and annul any patent to lands heretofore erroneously issued under a special grant shall only be brought within five years from the passage of this act, and suits to vacate and annul patents hereafter issued shall only be brought within ten years after the date of the issuance of such patents. But no patent to any lands held by a *bona fide* purchaser shall be vacated or annulled, but the right and title of such purchaser is hereby confirmed."

ruling of the Land Department resulting in a failure to withdraw the granted lands from entry; and upon the ground that the lieu land locations were without warrant in law, suit had been brought, and was then pending, to cancel the patents.[1]

---

[1] (From 28 Cong. Rec., Pt. 2, p. 1906.)

"Mr. Hepburn: . . . In another instance that I am familiar with, Mr. Speaker, in your own State [Mr. Mercer in the chair], there was a grant to a company when practically, by an error or an. oversight on the part of the officers of the United States, the lands lying on the line on either side of the file plat of the road were not withdrawn from market for a considerable period. Settlers came in and took these lands. Later, when the railroad was constructed, it was found that there was not within the limits of the grant a sufficient quantity to meet the purposes of the grant. The Department held that lieu lands might be given—lands in another locality—and the company was compelled to go away beyond its grant to lands that did not have the benefit of the construction of this road and take 201,000 acres, and one block of 10,000 acres of it they sold for $2,500—25 cents an acre; but they took these lands under the then ruling of the Department. Under the advice of the law officers of the Department, subsequently the Department changed its view. . . . Then they changed the ruling and held that lands must be taken within the prescribed limits or else the entries and selections were void. Now, one of the suits ordered is to recover the title of these lands taken in lieu of those that the company lost through the failure of the federal officers to withdraw the lands from market. . . .

"Mr. Lacey: As to the instance that my colleague cites as having occurred in Nebraska, I propose at the proper time to offer an amendment which I think will cover the points he has in mind. I will send the amendment to the Clerk's desk to be read as a part of my remarks, so that it may appear in the Record for the information of members.

"The amendment was read, as follows:

"Add at the end of section 1: '*Provided*, that no suit shall be brought. or maintained, nor shall recovery be had for lands or the value thereof, that were certified or patented in lieu of other lands covered by a grant which were lost or relinquished by the grantee in consequence of the failure of the Government or its officers to withdraw the same from sale or entry.'"

On the following legislative day (p. 1937), the amendment was offered by Mr. Lacey, accompanied with this explanation: "My

It is not our purpose to relax the rule that debates in Congress are not appropriate or even reliable guides to the meaning of the language of an enactment. *United States* v. *Trans-Missouri Freight Assn.*, 166 U. S. 290, 318. But the reports of a committee, including the bill as introduced, changes made in the frame of the bill in the course of its passage, and statements made by the committee chairman in charge of it, stand upon a different footing, and may be resorted to under proper qualifications. *Blake* v. *National Banks*, 23 Wall. 307, 317; *Holy Trinity Church* v. *United States*, 143 U. S. 457, 464; *Dunlap* v. *United States*, 173 U. S. 65, 75; *Binns* v. *United States*, 194 U. S. 486, 495; *Johnson* v. *Southern Pacific Co.*, 196 U. S. 1, 20; *Pennsylvania R. R. Co.* v. *International Coal Co.*, 230 U. S. 184, 198; *Five Per Cent. Discount Cases*, 243 U. S. 97, 107. The remarks of Mr. Lacey, and the amendment offered by him, in response to an objection urged by another member during the debate, were in the nature of a supplementary report of the committee; and as they related to matters of common knowledge they may very properly be taken into consideration as throwing light upon the meaning of the proviso; not for the purpose of construing it contrary to its plain terms, but in order to remove any ambiguity by pointing out the subject-matter of the amendment. This is but an application of the doctrine of the old law, the mischief, and the remedy.

The case of the Nebraska lands, mentioned in the debate, is easily identified from public sources of infor-

---

colleague [Mr. Hepburn] on yesterday explained that in Nebraska and in some other localities 'lieu lands' had been patented in place of lands that the railroad companies had lost by reason of mistake in the Department in allowing settlement upon those lands. The amendment that I offer confirms the title to those lands that have been thus patented to railroad companies where they have lost other lands by reason of mistake committed in the Department."

The amendment was agreed to (p. 1938).

mation. By Act of July 2, 1864, c. 216, § 19, 13 Stat. 356, 364, the Burlington & Missouri River Railroad Company was granted ten alternate sections per mile on each side of its road in that State. Owing to the failure of the Land Department to take the proper steps about withdrawing the land from the entry, large quantities of the granted lands south of the line were taken up by settlers, and in lieu of this the company was permitted by the Department to take excess lands on the north side of the line to the amount of over 200,000 acres. In *United States v. Burlington & Missouri River R. R. Co.* (1878), 98 U. S. 334, this court held that the grant was not limited to lands situate within twenty miles of the road, nor confined to the land opposite to each twenty-mile section of the line, as the Department had held; the court saying (p. 340): "If, as in the present case, by its [the Department's] neglect for years to withdraw from sale land beyond twenty miles from the road, the land opposite to any section of the road has been taken up by others and patented to them, there can be no just objection to allowing the grant to the company to be satisfied by land situated elsewhere along the general line of the road." At the same time the court held (p. 342): "The Act of Congress contemplates that one-half of the land granted should be taken on each side of the road; and the department could not enlarge the quantity on one side to make up a deficiency on the other." However, because the bill as drawn did not identify that part of the land as to which the company's patents were invalid, the decree of the circuit court in favor of the company was affirmed. Soon after the passage of the Act of March 3, 1887, an adjustment was directed for the purpose of distinguishing the tracts erroneously patented to the company on the north side in excess of the amount to which it was entitled on that side, the excess being 200,364.70 acres, and procuring a relinquishment by the company or a cancellation of the pat-

ents in acccrdance with the Act of 1887. *Burlington &
Missouri River R. R. Co.*, 6 L. D. 589; *Chapman* v. *Bur-
lington & Missouri River R. R. Co.*, 20 L. D. 496. It ap-
pears that a suit to carry out the adjustment by vacating
the erroneous patents was pending at the time of the pas-
sage of the Act of 1896. The language of the proviso was
aptly chosen to bar such a suit.

But it is said that there is no reason for confining the
policy of the proviso to past patents; that if it is only
fair, honest, and just that lands patented in lieu of others
lost or relinquished by the grantee in consequence of some
failure on the part of the Government or its officers should
be held by indefeasible title, the same policy would with
equal reason apply to future patents. In short, the ap-
peal is to the equity of the statute. But equity implies
equality; equal fairness and honesty on both sides. If
the prospective interpretation of the proviso could be
confined to future patents obtained without fraud or
mistake, there would be force in the argument; but suits
for the annulment of patents based upon fraud or mistake
are the very ones that are proposed to be barred; and in
such circumstances no appeal to the equity of the statute
can carry us beyond what is clearly expressed in the
language of the lawmaker; equitable considerations lie
on the side of a strict construction of a statutory provi-
sion that proposes to bar an equitable remedy.

And we deem the prospective interpretation as un-
reasonable as it is inequitable. It was one thing for
Congress to pass an act to prevent further prosecution of
a suit or suits to annul patents that already had been
made, unlawfully indeed, but for the purpose of making
good the consequences of previous mistakes by the Land
Department. Thus far it could act in the reasonable
belief that it knew the extent and consequences of the
immunity it was granting. But to say that where lieu
lands were thereafter certified or patented in place of

lands lost or relinquished by the grantee no suit should be maintained nor recovery had either for the lands or their value, no matter through what fraud or mistake they might be acquired, would be an entirely different matter, and would offer a premium for future wrongdoing, the extent of which could not easily be foreseen. We cannot attribute such a purpose to Congress without plainer language than is contained in this act.

For the reasons stated, we hold that the proviso is not a bar to the present suit, brought to annul a patent applied for and issued long after its enactment; and the decree under review is

*Reversed, and the cause remanded to the District Court for further proceedings in conformity with this opinion.*

MR. JUSTICE MCREYNOLDS took no part in the consideration or decision of this case.