## UNITED STATES v. LIMEHOUSE.

District Court, E. D. South Carolina.
Oct. 13, 1931.

Henry E. Davis, U. S. Atty., of Florence, S. C., and Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C.

John P. Grace, of Charleston, S. C., and W. C. Wolfe, of Orangeburg, S. C., for defendant.

ERNEST F. COCHRAN, District Judge.

The defendant stands indicted under U. S. Code, title 18, § 334 (18 USCA § 334), for sending through the mails certain letters which are set forth in the various counts of the indictment and are alleged to be filthy within the meaning of the statute. The defendant has filed a demurrer and made a motion to quash all the counts of the indictment on the ground that the letters set forth therein show upon their face that they are not within the meaning of the statute. The original statute (Rev. St. § 3893) prohibited the mailing of "every obscene, lewd or lascivious" book, letter, etc. In the case of Swearingen v. U. S., 161 U. S. 446, 16 S. Ct. 562, 40 L. Ed. 765, the Supreme Court held that the original statute did not cover language which was coarse, vulgar, and, as applied to an individual, libelous; but that the offence aimed at was the use of the mail to circulate or deliver matter which tended to corrupt the morals of the people, and that the words "obscene," "lewd," and "lascivious," as used in the statute, signified that form of immorality which has relation to sexual impurity, and have the same meaning as given them at common law in prosecutions for obscene libels; and, as the statute is highly penal, it should not be held to embrace language unless it is fairly within its letter and spirit. While it is not expressly so stated in the opinion of the court, it is evident that this construction of the statute was reached by restricting the meaning of the word "obscene" under the familiar rule of a sociis, so as to give it a similar meaning to the words "lewd" and "lascivious."

The letters now under consideration are clearly not within the meaning of the original statute as construed in the Swearingen Case, and the government so concedes. The language of the letters is coarse, vulgar, indelicate, and some of it is plainly libelous, and some possibly indecent, but it does not tend to corrupt the morals of the people in relation to sexual matters.

But the original statute was amended by adding the words "and every filthy," so that the statute now reads "every obscene, lewd, or lascivious and every filthy" book, letter, etc. The contention of the government is that the addition of the words "and every filthy" imports into the statute a new class of cases which need not relate to sexual matters nor tend to corrupt the morals, and that the letters in question come within the meaning of that word when so construed. The defendant contends that those words add nothing to the statute, but, when properly construed in connection with the context, must be held to have the same meaning practically as the word "obscene" and be restricted, as that word was restricted, by the context.

In considering this matter, I think it advisable first to consider the meaning of the two words "obscene" and "filthy," respectively. While they are synonymous, they are not absolutely coextensive. They cover some common ground, but each covers some ground not covered by the other. Compare the definitions of the two words in the Century and Standard dictionaries, respectively. The word "obscene" covers some ground not covered by the word "filthy," in that "obscene" sometimes has the meaning ill-omened, but this meaning of "obscene" may be disregarded here, for it has never been contended that it was used in the sense of ill-omened, either in the present statute or the original. The word "filthy" covers some ground not covered by the word "obscene," for "filthy" may refer to the physical material condition of an article, while "obscene" usually refers to language, ideas, literature, etc. This distinction between the two terms may be also disregarded, because it is perfectly evident that Con-

gress did not by the use of the word "filthy" intend that the statute should cover cases of the physical material condition of the book or other article. Laying aside, therefore, these two differences, and considering the meaning of the two terms in the connection in which they are used here, that is, with reference to language, ideas, literature, etc., it is perfectly clear to my mind that they are for all practical purposes coextensive. The word "filthy" in such a connection certainly has no broader signification than the word "obscene." I do not see any escape from the conclusion, therefore, that on the face of the statute the addition of the word "filthy" did not enlarge it. Congress added to the statute a word practically identical with "obscene," placed it in the same connection, concerning the same subject-matter, and, if the word "obscene" under the original statute should be restricted because of the context, it is impossible to resist the conclusion that the word "filthy" should be likewise restricted. Upon the face of the statute, therefore, there is no great difficulty in reaching the conclusion that letters, to come within the amended statute, must be filthy and must refer to sexual matters and be calculated to corrupt the morals of the people.

It is said, however, that the proceedings in the House of Representatives, when the statute was amended, show that it was the intention of Congress to enlarge the statute by adding a class which had no reference whatever to sexual matters. The general rule is that debates in Congress are not appropriate, or even reliable, guides to the meaning of an enactment. United States v. St. Paul, etc., Ry. Co., 247 U. S. 310, 318, 38 S. Ct. 525, 62 L. Ed. 1130. But it was also held that the reports of a committee, including the bill as introduced, changes made in the framing of a bill in the course of its passage, and statements made by the committee chairman in charge of it, stand upon a different footing, and may be resorted to under proper qualifications. United States v. St. Paul, etc., supra. It was also held that the remarks of a member offering an amendment in response to an objection urged by a member were in the nature of a supplementary report of the committee, and, where they relate to matters of common knowledge, might be taken into consideration, not for the purpose of construing it contrary to its plain terms, but in order to remove any ambiguity by pointing out the subject-matter of the amendment. United States v. St. Paul, etc., supra. See, also, Richbourg Motors Co. v. U. S., 281 U. S. 528, 536, 50 S. Ct. 385, 74 L. Ed. 1016, 73 A. L. R.

1081. I have read very carefully the proceedings in the House when this amendment was adopted, and I do not think that those proceedings necessitate a change in the construction of the statute. It appears from those proceedings that the amendment to the statute was not proposed by the committee, but was made from the floor. The committee made no report upon the proposed amendment. The question was before the House on two occasions. Upon the first occasion (42 Cong. Rec. 995, 999) the report of the committee being before the House with the words "obscene, lewd, and lascivious," a member of the committee offered an amendment by adding the words "vile, filthy, or indecent." This amendment provoked considerable opposition. Some appeared to think that the words enlarged the statute, while others were of a contrary opinion. Some were opposed to the amendment if the words could be construed to enlarge the statute. The chairman of the committee stated that he could not accede to the amendment. On the second occasion, when the matter came up before the House (43 Cong. Rec. 283, 284), the member proposing the amendment "vile, filthy, or indecent" withdrew it and offered as a substitute the words "and every filthy." It is true that the member of the committee who proposed the substituted amendment stated that it was the intention to enlarge the statute, and the chairman of the committee finally agreed to the substitution, but the proceedings show that there was considerable doubt whether the amendment would have any effect or not. The chairman of the committee at first stated positively that it would include matter that was merely vulgar, but finally expressed doubt about that. Moreover, it was pointed out that the courts might hold that the language of the substituted amendment would not enlarge the statute. In this connection it is to be observed, also, that the case of People v. Eastman (1907) 188 N. Y. 478, 81 N. E. 459, 460, 11 Ann. Cas. 302, was adverted to, and it was pointed out that the Supreme Court of New York had held that similar words did not enlarge the meaning of the words "obscene, lewd [and] lascivious." But it is unnecessary to advert to further details of the proceedings before the House. It is sufficient to say that, when the whole proceedings are read carefully, it will be seen that those proceedings afford no safe guide for the construction of this statute. In addition to this, I do not think that there is such ambiguity in the meaning of the word "filthy" as would warrant the court in considering those proceedings, certainly not, unless they

evinced a clearer intention than they do. It is perfectly apparent that Congress hesitated to go to the length of making unmailable matter which is merely coarse, vulgar and indelicate, disgusting, or libelous. Moreover, I think that in a criminal case of this sort, of a highly penal nature, a citizen should not be compelled to resort to proceedings in Congress to determine whether a course of action on his part is or is not prohibited by law, when the statute is fairly clear on its face. As was said by the Supreme Court, while it is not likely that a criminal will carefully consider the text of the law, it is reasonable that a fair warning should be given to the world in language that the common world will understand of what the law intends to do if a certain line is passed; and to make the warning fair, as far as possible, the line should be clear. McBoyle v. U. S., 283 U. S. 25, 27, 51 S. Ct. 340, 75 L. Ed. 816.

■ It is argued, however, that Congress must have meant something by the addition of the words under consideration, and that effect must be given to every word of a statute, if possible. It is true that effect must be given, if possible, to every word in a statute; but, if it is not possible without doing violence to the plain meaning of a word, it should not be done. There are only two possible ways to give effect to the word "filthy" in this connection, different from the word "obscene." It might be held that the word "filthy" covers physical material filthiness, as well as filthiness in relation to language and ideas. I do not think the context permits this, but, even if it did, it would not avail the government here, for there is no contention that the matter here alleged to be nonmailable was filthy in a physical material sense. The word "filthy" might conceivably be held to include matter which has no relation to sexual matters, but would corrupt the morals of the people in other respects. Here, again, I think the context forbids any such construction. But, even if such construction be permissible, it would not avail the government in this case, because, while the letters in question are, as has been stated, coarse, vulgar, indelicate, disgusting, and in some instances libelous, nevertheless, I cannot perceive that they would have any tendency to corrupt morals. They repel rather than incite.

The defendant has called my attention to the case of Dysart v. U. S., 272 U. S. 655, 47 S. Ct. 234, 71 L. Ed. 461. That decision reaffirms the Swearingen Case, but I do not think it decisive of the precise point here, because the word "filthy" was not under consideration in that case. It has some persuasive force, however, because it does show that the Swearingen Case is still the law so far as it is applicable.

If Congress had intended to change the law announced in the Swearingen Case, it could very easily have used appropriate language, and there would have been no doubt about it. In this connection it may be observed that in the very next section (U. S. Code, title 18, § 335 [18 USCA § 335]), in reference to matter upon postal cards or upon envelopes or outside covers or wrappers, Congress has made it clear that, not only matters of an "obscene, lewd, or lascivious" nature are embraced within the statute, but also "libellous, scurrilous, defamatory and threatening" matter is expressly prohibited. Congress could have made it equally clear under section 334, as they have done under section 335, if that was the intention.

The Radio Act of February 23, 1927, § 29, 44 Stat. 1172 (47 USCA § 109) forbids the utterance by means of radio communication of any "obscene, indecent, or profane language." The meaning of these words was considered in a very interesting opinion by the Circuit Court of Appeals for the Ninth Circuit, in the case of Duncan v. U. S., 48 F. (2d) 128. Certiorari denied June 1, 1931, 283 U. S. 863, 51 S. Ct. 656, 75 L. Ed. 1468. The court refrained from setting forth in hæc verba the highly objectionable language which was the subject of the indictment. The court's summary of the language, however, indicates that it was very similar to the language used in the case at bar, though the latter is probably somewhat more objectionable. The court held that, while the language used in that case was vulgar, scurrilous, and indecent in the popular sense of the term, it was not obscene or indecent within the meaning of those terms as universally applied in the administration of the criminal law with reference to the use of obscene and indecent language, and that the test was whether or not the language alleged to be obscene would arouse lewd or lascivious thoughts in the minds of those hearing or reading the publications. The court therefore decided that the language in question was not obscene or indecent under that statute; but that certain portions of the language used were profane within its meaning. While this case is not directly in point, nevertheless it is strongly persuasive of the correctness of the conclusion I have reached in the present case.

The government has called my attention to three cases construing the amended statute. The first case is that of United States v. Dempsey (D. C.) 188 F. 450. In that case,

the court stated, in substance, that it was of opinion that Congress meant by the additional words to enlarge the statute. The court deemed it its duty to submit the letter to the jury. An examination of the contents of the letter in that case shows that a jury might have thought that it was within the inhibition of the statute as construed in the Swearingen Case.

The next case is Tyomies Publishing Co. v. U. S. (C. C. A. 6th) 211 F. 385. In that case, the court held that the additional words showed it was the purpose of Congress to enlarge the statute, but there was no discussion of the question, and it appeared also that the meaning of the word "filthy" was restricted to what was morally depraving and debasing. While I am extremely reluctant to render a decision at variance with the decision of a Circuit Court of Appeals, nevertheless, it is the decision in another circuit and is not binding upon me, and the defendant has a right that I should exercise my own judgment as to the meaning of the statute. I am convinced that Congress never would have amended this statute if it was thought that it would open the door to the prosecution of all kinds of publications which are merely coarse, libelous, indelicate, or disgusting, and I do not think that I should follow the Tyomies decision against my own firm convictions.

The last case is United States v. Davidson (D. C.) 244 F. 523. This is a long case, and I will not pause to review it in detail. It is sufficient to say that I have read it carefully, and the whole argument and reasoning of the learned judge would indicate that the amendment did not enlarge the statute, and he appears to have resolved his doubts under the influence of the decision of Tyomies Publishing Co. v. U. S., supra, and also because the matter in question might be deemed by a jury to come under the Swearingen Case. At any rate, I am not bound by this decision, and, if it holds what the government contends, I am not in accord with it.

The writer of this opinion knows from long years' experience as a prosecuting officer for the government that many hundreds of cases similar to this have come up for consideration and have occasioned the Post Office Department and prosecuting officers a great deal of trouble in determining whether they should be prosecuted or not in view of the amendment to the statute. Few of such cases have been prosecuted. It is well, therefore, that the question should be decided; and, if I am in error, the government has a remedy by appeal, and the matter can be settled finally and authoritatively.

I am constrained, therefore, to hold that, under a proper construction of this statute, the amending words do not add materially to the statute so as to bring within the inhibition of the law the letters set forth in the various counts of the indictment. I will, however, give the government a certificate that the indictment is held to be bad solely under my construction of the statute, in order that there may be an appeal if the government be so advised.