## JETT et al. v. MONTAGUE MFG. CO.

### No. 5507.

Court of Appeals of the District of Columbia.
Argued Oct. 10, 1932.
Decided Oct. 31, 1932.

Richard A. Harman, of Washington, D. C., for plaintiffs in error.

Frank J. Hogan and William H. Donovan, both of Washington, D. C., for defendant in error.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

On December 17, 1928, at Washington, D. C., the plaintiff in error, then a married woman, signed a promissory note given by her husband payable in the District of Columbia to the defendant in error for the sum of $498.28. The plaintiff in error received no consideration for her signature, but signed the note as accommodation indorser. The note became due and was, in default, whereupon suit was begun against the plaintiff in error thereon in the municipal court of the District of Columbia. The defense there made was that plaintiff in error was disqualified by the statutes of the District of Columbia from becoming an accommodation indorser upon a promissory note, and that the note in suit in so far as she was concerned was void. This defense was overruled by the municipal court and judgment was rendered against her. The present case is brought to review that judgment.

This controversy calls for a consideration of the statutes of the District govern-

ing the rights of married women to enter into contracts.

Section 43, title 14, of the Code of the District of Columbia now in force, and which was in force as section 1155, Code, D. C., at the time of the transaction here involved, is as follows:

"43. *Power of wife to trade, and to sue and be sued.*—Married women shall have power to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also to sue separately for the recovery, security, or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried; contracts may also be made with them, and they may also be sued separately upon their contracts, whether made before or during marriage, and for wrongs independent of contract committed by them before or during their marriage, as fully as if they were unmarried, and upon judgments recovered against them execution may be issued as if they were unmarried; nor shall any husband be liable upon any contract made by his wife in her own name and upon her own responsibility, nor for any tort committed separately by her out of his presence without his participation or sanction."

Prior to May 28, 1926, there was a proviso at the end of this section which reads as follows: "Provided, That no married woman shall have power to make any contract as surety or guarantor, or as accommodation drawer, acceptor, maker, or indorser." Code of Laws 1924, § 1155.

It is plain that under the comprehensive provisions of the foregoing section, if not restricted by the proviso, married women, being given the right to contract "as fully and freely as if they were unmarried," would possess the right to enter into contracts as accommodation indorsers of the promissory notes of other persons, including their husbands. In Kelly on Contracts of Married Women; p. 162, § 20, it is said: "To the extent of the power given to a married woman by the statutes to enter into contracts with third persons she has the power to enter into a contract of suretyship in behalf of her husband. If the statute gives her general power to contract, she can make a personal obligation or an obligation binding on her estate the same as if she were sole."

However, under section 1155, as restricted by the proviso, this court consistently held that a married woman lacked capacity to become accommodation surety upon the debt of others, and that her signature written upon any instrument for such purpose would be absolutely void. In Waters v. Pearson, 39 App. D. C. 10, the court, in the language of Chief Justice Shepard, held: "Sec. 1155 of the Code * * * confers general power upon married women to engage in business, to contract, to sue separately, etc., as fully and freely as if unmarried, but concludes with this proviso: 'That no married woman shall have power to make any contract as surety or guarantor, or as accommodation drawer, acceptor, maker, or indorser.' By this proviso married women were prohibited from binding themselves as surety for others." In Fisk Rubber Co. v. Muller, 42 App. D. C. 49, involving an accommodation indorsement of a promissory note by a married woman, the court again held: "The suretyship agreement, so far as it affected appellee, was clearly obnoxious to sec. 1155 of the Code, * * * which declares 'that no married woman shall have power to make any contract as surety or guarantor, or as accommodation drawer, acceptor, maker, or indorser.'" In Schwartz v. Sacks, 55 App. D. C. 87, 2 F.(2d) 188, the court, in a case involving the suretyship of a married woman upon the note of her husband, held that the obligation of the married woman upon a promissory note and also her deed of trust to secure the same when signed by her as her husband's surety were void and could not be valid in the hands of an assignee. In Bradbury v. Howard, 58 App. D. C. 383, 31 F.(2d) 222, it was held by the court that, under section 1155, a note and deed of trust signed by a married woman undertaking to bind herself as surety for her husband was absolutely void and failed to impose upon her any obligation enforceable either at law or in equity, and that this inhibition was applicable to a deed of trust given to secure such note covering real estate by her husband and herself as tenants by the entireties. In each of these cases the restriction upon the married woman's right to contract as surety or accommodation indorser was attributed by the court to the proviso alone. Accordingly, under section 1155, if taken together with the proviso, the accommodation indorsement of the note now in question by the plaintiff in error would have been absolutely void.

However, by an amendatory act approved May 28, 1926 (44 Stat. 676, c. 419), Congress repealed the proviso in the following language:

920

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 1155 of 'An Act to establish a code of law for the District of Columbia,' approved March 3, 1901, be, and the same is hereby, amended by striking out the following words contained in said section 1155:

" 'Provided, That no married woman shall have power to make any contract as surety or guarantor or as accommodation drawer, acceptor, maker, or indorser.' "

In view of the foregoing judicial history of the section, taken together with the proviso, it was plainly the legislative intent that the repeal of the proviso should remove the restrictions imposed by it upon the rights of married women to make contracts as sureties or guarantors, or as accommodation drawers, acceptors, makers, or indorsers, thereby empowering them to enter into such contracts as if unmarried.

This conclusion is sustained by the legislative history of the repealing enactment. It appears from the congressional records that, in the report made to the Senate by the Committee on the District of Columbia, having charge of the bill in question, after referring to the foregoing decisions of this court and the interpretation of the law as therein set out, it was stated: "This bill, by striking out the proviso, would give a married woman power to use her property and to contract as freely as any other person. The effect would be to remove a handicap under which married women deal with their separate property or engage in business. The bill would leave women after marriage in the same position with regard to their property and obligation or contract that they held before marriage." Similar language appears in the report upon the bill made to the House of Representatives by the Committee on the District of Columbia having charge of the bill.

It is settled law that the report of a committee of either House of Congress recommending the passage of a bill with explanatory statements concerning the same may be consulted to ascertain the intent of the lawmaking body in its enactment. U. S. v. St. Paul M. & M. Railway, 247 U. S. 310 and 318, 38 S. Ct. 525, 62 L. Ed. 1130; Duplex Printing Press Co. v. Deering, 254 U. S. 443, 474, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196.

According to this view, we hold that the decision of the municipal court was correct, and it is affirmed, with costs.