## PACIFIC FREIGHTERS CO. v. ST. PAUL, FIRE & MARINE INS. CO.

### No. 9244.

Circuit Court of Appeals, Ninth Circuit.

Jan. 31, 1940.

Felix T. Smith and Francis R. Kirkham, both of San Francisco, Cal. (Pillsbury, Madison & Sutro, of San Francisco, Cal., of counsel), for appellant.

Irving H. Frank, Nathan H. Frank, and Irving H. Frank, all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

HANEY, Circuit Judge.

Appellee, who was liable in general average for the amount due, if any, from the underdeck cargo on board the schooner "Rosamond", brought suit against appellant, who was the owner of the schooner, to recover an amount allegedly due in general average, and obtained the decree from which this appeal was taken.

Appellant was the owner of the schooner "Rosamond" and chartered her to Comyn, Mackall & Co., the charter providing for the carriage of a full cargo of lumber from Port Blakeley, Washington to Cape Town, South Africa, freight to be considered earn-ed, vessel or cargo lost at any stage of the voyage, and general average, if any, to be payable under the York-Antwerp Rules of 1890. Rule I of such rules provides: "No jettison of deck cargo shall be made good as general average". The charterer shipped the cargo of lumber, paid the freight, took bills of lading which provided for general average under the York-Antwerp Rules of 1890, sold the cargo to Smith, Kirkpatrick & Co., appellee's assignor.

The vessel embarked, and on March 27, 1920, encountered heavy weather which damaged the vessel, causing the master thereof to change course and seek a port of refuge for the safety of the ship and cargo. A hurricane was encountered on April 16, 1920, which caused the master to thereafter jettison the deck load. The vessel reached San Francisco on May 15, 1920, and thereafter discharged its underdeck cargo, and was repaired at a cost of $8,317.62. The vessel then reloaded the underdeck cargo, and took on a new deck cargo, and completed the voyage. Appellee agreed to assume its assignor's responsibility for any general average contribution due from the underdeck cargo.

The adjuster agreed upon by the parties fixed a total value of vessel and underdeck cargo, without the value of the freight on the new deck cargo, at $109,258, the separate values being $47,596 on the vessel and $61,662 on the underdeck cargo. He fixed the general average at $3,623.40 for the vessel, and $4,694.22 for the underdeck cargo. On July 13, 1921, appellee filed this suit on the theory that the freight on the new deck cargo was a part of the venture, and the general average expense should be deducted therefrom and the balance apportioned between appellant and appellee. The court below so held. The gross new freight was $21,191.15. After deducting the general average expense, the balance was apportioned: $5,674.35 to appellant and $7,199.18 to appellee. This appeal followed.

Appellant contends that the amount of the new freight should not be pro-rated between the vessel and her cargo in general average. Appellant does not favor us with any definite formula for computation of the contributions in general average in the instant case. But since appellant has filed a cross-libel praying for general average contribution from the appellee in the amount of $4,694.22, we can only assume that it is urging that the new freight should be disregarded entirely in any com-

putation. Appellant contends in the alternative that in "any event, the only thing to be considered should be the net freight, not the gross freight".

In The Star of Hope, Fed.Cas. No. 405, 76 U.S. 203, 228, 229, 9 Wall. 203, 228, 229, 19 L.Ed. 638 it is said:

"General average contribution is defined to be a contribution by all the parties in a sea adventure to make good the loss sustained by one of their number on account of sacrifices voluntarily made of part of the ship or cargo to save the residue and the lives of those on board from an impending peril, or for extraordinary expenses necessarily incurred by one or more of the parties for the general benefit of all the interests embarked in the enterprise. * * *

"Where expenses are incurred or sacrifices made on account of the ship, freight, and cargo, by the owner of either, the owners of the other interests are bound to make contribution in the proportion of the value of their several interests. * * *

"Such claims have their foundation in equity, and rest upon the doctrine that whatever is sacrificed for the common benefit of the associated interests shall be made good by all the interests which were exposed to the common peril and which were saved from the common danger by the sacrifice. * * *"

▆ The mechanics of apportionment are: the value of each of the contributing interests is multiplied by a fraction which has as its numerator the sum of the general average expense and has as its denominator the sum of the contributing values. 2 Arnould on Marine Insurance and Average, 11th Ed., 1261, § 975, 1285, § 991. We think the method followed below is erroneous in any event because such method amounts to a distribution of profits to which the underdeck cargo has no claim. General average relates to contributions for losses, not distribution of profits. Likewise, if the new freight is to be considered at all, we think only the "net" new freight should be considered. We think the principle, applicable to freight subject to general average, is applicable to the new freight here involved. That principle is that only the "net" freight is to be considered. 2 Arnould, supra, 1282;

Congdon on General Average in the United States, 157.

The remaining question is whether the net new freight should be considered as one of the contributing interests. Literally read, the language in The Star of Hope, supra, quoted indicates that the new freight not being exposed to the common peril was not saved therefrom, and therefore is not subject to contribution. See also 2 Arnould supra, 1255, § 970. It can be seen, however, that if such rule were applied here, we would enable the ship to profit at the expense of the underdeck cargo.

▆▆ The parties concede that there are no precedents fettering or assisting our judgment. "The law of general average has its foundation in equity". Barnard et al. v. Adams et al., 51 U.S. 270, 302, 303, 10 How. 270, 302, 13 L.Ed. 417. In arriving at a fair result, the equitable principle that "equity implies equality; equal fairness and honesty on both sides" (United States v. St. Paul, M. & M. Ry. Co., 247 U.S. 310, 320, 38 S.Ct. 525, 529, 62 L.Ed. 1130) should control. We think fairness requires a holding in such a case as this with its peculiar facts that: if the "net" new freight exceeds the general average expense, then there has in fact been no loss and no contribution due from anyone; if the general average expense exceeds the amount of the "net" new freight, then only the amount of the excess should be apportioned among the contributing interests. We arrive at this result because the event causing the loss also enabled the ship to carry new cargo. Were it not for the event, such new cargo would not have been obtained. It is only right, we think, that the ship's profit be restricted to the amount of the excess of the "net" new freight over the general average expense.

We express no opinion as to what the rule is or should be if the record disclosed other contributing interests, or other general average expenses or losses.

Inasmuch as the amount of the "net" new freight is not before us, we are unable to dispose of the case.

The cause is reversed and remanded for further proceedings in accordance with this opinion.