In re KRIEGER STEEL SECTIONS, Inc.

No. 48012.

United States District Court
E. D. New York.

June 1, 1951.

On Petition to Review Feb. 26, 1952.

352

Levin & Weintraub, New York City, Benjamin Weintraub, New York City, for trustee.

Frank J. Parker, U. S. Atty. Eastern District of New York, Brooklyn, N. Y., Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y., Henry C. Clark, Sp. Asst. to Chief Counsel Bureau of Internal Revenue, New York City, Lloyd C. Hooks, Asst. to Chief Counsel Bureau of Internal Revenue, Washington, D. C., for the United States.

Nathaniel L. Goldstein, Atty. Gen. State of New York, Samuel Stern, Asst. Atty. Gen., for Industrial Commissioner State of New York.

Nathaniel L. Goldstein, Atty. Gen. State of New York, Anthony P. Ludden, Asst. Atty. Gen., for State Tax Commission, New York.

John P. McGrath, Corporation Counsel New York City, J. L. Hauptman, Asst. Corporation Counsel, Brooklyn, N. Y., for City of New York.

Moses & Singer, New York City, Arnold A. Jaffe, New York City, for White and Funk attorneys at law asserting lien.

Bachrach & Bisgyer, Brooklyn, N. Y., Samuel Bisgyer, Brooklyn, N. Y., for James A. Watson, owner of real property formerly owned by bankrupt.

CASTELLANO, Referee.

The final account of the trustee filed February 2, 1951 was considered at a meeting of creditors held on February 19, 1951. The account discloses the receipt and deposit by the trustee of six checks received by him as refunds from the Treasurer of the United States on or about February 8, 1950, which total $35,373.43. Upon examination by the Referee of Federal tax claims on file it appeared that the Collector of Internal Revenue First District of New York filed an amended claim on October 30, 1950 for Federal taxes due in the sum of $24,383.71. This claim amended and superseded the Collector's prior claims, one of which was filed on May 10, 1949 in the sum of approximately $246,000.00. The account discloses that the trustee has a cash balance on hand of $54,523.78 which includes the moneys refunded to the trustee by the Treasurer of the United States on February 8, 1950, at which time it appeared that the United States had a claim for taxes due it from the bankrupt and this estate.

Upon such facts appearing of record, the Referee suggested to the attorneys for the trustee to give notice to the United States Attorney as to the refunds received

by the trustee after the filing of the Government's claims for taxes, which were reduced by the amended claim to $24,383.71. Such notice was given under the order to show cause dated March 2, 1951. Notice was also given to the State of New York and City of New York as both had filed tax claims; and to the parties asserting an attorney's lien on the refunds, for services rendered prior to the bankruptcy.

The trustee's petition and the order to show cause of March 2, 1951 discloses the facts mentioned and recites that the following unpaid tax claims are on file:

| | |
|---|---|
| Collector of Internal Revenue, Federal Taxes | $24,383.71 |
| State Tax Commission, New York, Franchise Taxes | 30,244.77 |
| New York State Department of Labor, Division of Placement and Unemployment Insurance | 3,777.56 |
| City of New York, Sales & Business Taxes | 5,500.00 |
| Total Tax Claims | $63,906.04 |

In addition, the petition discloses there are other claims and administration expenses which are unpaid:

| | |
|---|---|
| Wage claims entitled to priority | 3,734.53 |
| One rent claim, administration claim | $400.00 |
| Attorneys Aaron J. Funk and Harold B. White assert a lien for services in connection with the refunds paid to the estate | 7500.00 |

Administration expenses for services of attorneys for trustee, accountant and trustee remain to be fixed and allowed

Funds on hand are insufficient to pay tax claims in full.

The trustee now seeks an order determining the rights of the parties in interest as to the funds in the hands of the trustee which include the refunds of $35,373.42 paid to the estate by the United States at a time when there was due to the United States from the bankrupt and this estate certain amounts for unpaid taxes. The attorneys for the trustee ask that all funds in the trustee's possession be kept by the trustee and distributed in accordance with the order of priorities under Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104. They urge that the United States waived its existing right to set off when the payments were made to the trustee.

Upon the hearings held on March 14, 1951 and April 18, and 25, 1951, the State of New York and the attorneys asserting a lien on the total of the refunds joined in the position taken by the trustee. The parties concede that prior to the time of payment of the refunds of interest on overassessments of $35,373.43 the United States had the right to deduct therefrom the amount due it for taxes in the sum of $24,-383.71 and remit the balance to the estate as refund of interest on overassessments. It is argued that when payment was made, the United States waived its right to set off the amount due the United States for taxes.

The United States urges that the payments to the estate as refunds for interest on overassessments were erroneous payments, and seeks to recover from the trustee an amount payable out of the refunds, equal to the amount set forth in its amended proof of claim for taxes due it, in the sum of $24,383.71.

The adverse parties herein are mainly the taxing agencies of the City of New York and State of New York and the trustee. The attorneys asserting a lien of $7500.00 on the refunds as being procured through their services have an application pending to fix their lien at $7500.00 on consent of the trustee, which agreement has not been approved by the Court. The funds of the estate are ample to protect them for any amount the court may determine to be the reasonable value of their services. The claim made at the hearing on behalf of James A. Watson, owner of the realty formerly owned by the bankrupt who voluntarily appeared at the hearing, that in the event the trustee refunds the $24,383.71 to the United States, the State will receive less in dividends on its claim for Franchise taxes, and he will be obliged to pay the balance due the State for Franchise taxes, as the same are a lien on his real property.

This claim, if it has merit, may be considered on any application he makes to this Court in connection with his payment of $7500.00 to the estate in settlement of the law suit instituted by the trustee against him. Inspection of the claims on file would disclose that long prior to the payment of refunds to the trustee the United States had filed claims herein for taxes in substantial amounts.

Upon the record of the hearings, the testimony and the exhibits received in evidence, I find that on February 8, 1950 the Commissioner of Internal Revenue forwarded to the trustee in bankruptcy six checks payable to the trustee of this estate which totalled the sum of $35,373.43 which were deposited by the trustee in his trustee's account and that the proceeds thereof are still in the possession of the trustee. The checks were accompanied by letters (trustee's ex. 1) showing that the payments were made for refunds of interest on overassessments. The taxpayer, the bankrupt herein, received credit for the amounts allowed for overassessments.

I find that the Collector of Internal Revenue filed an amended claim for taxes due the United States in the sum of $24,383.71, and that this amount was due the United States from the bankrupt herein prior to February 8, 1950, when the refunds for interest were paid to the trustee. This claim supersedes prior claims of the United States including a prior claim for taxes due the United States filed May 10, 1949 in the sum of $247,406.14.

I find that it is an established practice of the Bureau of Internal Revenue in bankruptcy cases to off-set all outstanding Federal taxes due the United States against any amount found payable to the taxpayer or his trustee in bankruptcy in accordance with the rights of the United States under existing laws. This practice was not followed in the case at bar. The Bureau on or about February 8, 1950, through inadvertence failed to deduct the amount then due the United States in the sum of $24,-383.71 and erroneously remitted to the trustee the sum of $35,373.43, the amount of refunds for interest on overassessments computed as due to the bankrupt. I find that this amount was not payable to the estate because the outstanding Federal taxes due to the United States at that time must be deducted under the existing rights of the United States. I find that the only sum payable to the trustee at the time of payment of refunds for interest was the difference between the computation of interest $35,373.43 and the outstanding taxes due to the United States of $24,383.71, to wit, the sum of $10,989.72.

In conclusion, I am of the opinion that the trustee has in his possession the sum of $24,383.71 belonging to the United States which must be refunded. An order will be entered directing the trustee to pay to the Collector of Internal Revenue First District, New York the sum of $24,383.71 out of the funds received by the trustee from the Treasurer of the United States in the sum of $35,373.43 on or about February 8, 1950. Talcott v. U. S., 9 Cir., 23 F.2d 897, certiorari denied 277 U.S. 604, 48 S.Ct. 601, 72 L.Ed. 1011; Wilber National Bank of Oneonta v. U. S., 294 U.S. 120, 55 S.Ct. 362, 79 L.Ed. 798; U. S. v. St. Paul M. & M. R. Co., 247 U.S. 310, 38 S.Ct. 525, 62 L.Ed. 1130.

That upon making such payment by the trustee, the amended proof of claim filed by the Collector of Internal Revenue in the sum of $24,383.71 and all other preceding proofs of claim filed herein by the United States for taxes due will be expunged and disallowed. Distribution of the remaining funds of this estate may thereafter be ordered pursuant to Section 64 of the Bankruptcy Act.

Settle order on notice.

## On Petition to Review

**KENNEDY, District Judge.**

This is a petition to review an order made by an official referee in bankruptcy on June 18, 1951. The petition is by the bankrupt's trustee. The order challenged is based upon a careful opinion and decision incorporating the findings of fact which the referee made, and which in turn were based upon testimony taken before him.

The referee has found that on February 8, 1950, the Commissioner of Internal Revenue forwarded to the trustee in bankruptcy six checks payable to his order and totaling the sum of $35,373.43. Those funds are now in the possession of the trustee. The payment was explained by letters showing that the amount in question represented interest on overassessments. At the time of these payments the bankrupt owed federal taxes in the amount of $24,383.71, the detail of which is reflected in an amended claim on file. (Originally (May 10, 1949) the United States had filed a claim in the sum of $247,406.14).

The referee has found that it is an established practice of the Bureau of Internal Revenue in bankruptcy cases to offset against outstanding federal taxes any amounts payable to the taxpayer or to his trustee in bankruptcy. But in the case at bar this practice was not followed. In other words, through inadvertence, some subordinate in the Bureau paid the amount in question to the trustee without utilizing the available offset.

The conclusion of the referee was that the trustee should repay the sum of $24,-383.71 to the Collector of Internal Revenue for the First District of New York out of the fund ($35,373.43) received on February 8, 1950, as interest on overassessments, and that upon the making of this payment the proof of claim filed by the collector be expunged and disallowed.

I need not, I think, spend much time on the effect of the findings of fact which the referee has made. The key finding is, of course, that the payment of February 8, 1950, was made through inadvertence and that the sum was "erroneously remitted to the trustee". The trustee is undoubtedly conscious of the fact that it would be a waste of time to attack the findings of fact since they are amply supported by all the evidence in the case. But the trustee urges that the order is wrong because the government waived its claim to taxes, and the referee erroneously concluded that it had not. Moreover, the trustee says that petitioners

White and Funk have an attorneys' lien in the amount of $7,500. as the result of a settlement between themselves and the trustee and in payment for legal services in securing the erroneous payment.

Many cases are cited by petitioner to the general effect that it is possible for a creditor to waive his rights against a bankrupt estate, including the right of setoff. But no case has been mentioned which even hints that the same rule of law applies to a claim by the government for taxes. It seems to me that it would be a wrong and dangerous course to hold that the rights of the government to taxes (whether in a direct proceeding to collect them or in a proceeding where the right of setoff exists) can be lost by the erroneous and inadvertent action of a subordinate in the Bureau of Internal Revenue. I have always believed that it was horn-book law that the sovereign cannot lose its rights by estoppel or by waiver. And I see nothing in this case or in the authorities cited by the petitioner which would support a contrary view.

The matter of the attorney's lien is puzzling. In effect the suggestion by the trustee and by Messrs. White and Funk is that an attorney's lien attached to the erroneous payment, and that it should follow the fund repaid to the government to correct the mistake. It is plain that the government was not bound by agreement to reduce its claim for taxes ($24,383.71) by $7,500. or any other amount. And yet if I adopt the suggestion made in behalf of the petitioner I would be making an agreement for the government, or at least awarding money on a *quantum meruit* basis, for services in the collection of taxes—services which were neither asked nor needed. The result is most unfortunate, I acknowledge. But a mistake has been made by a government servant, and in the last analysis the question is whether private persons can secure an advantage by reason of that mistake. Put in that way, clearly the only permissible answer is in the negative. The petition is dismissed and the order is affirmed.