**ANDERSON**

**v.**

**UNITED STATES CIVIL SERVICE COMMISSION.**

**Civ. A. No. 465.**

United States District Court
D. Montana, Helena Division.

Feb. 13, 1954.

Myles J. Thomas, Helena, Mont., for petitioner.

Krest Cyr, U. S. Dist. Atty., Butte, Mont., Dale F. Galles, Asst. U. S. Atty., Billings, Mont., Frank M. Kerr, Michael J. O'Connell, Asst. U. S. Attys., Butte, Mont., for respondent.

PRAY, Chief Judge.

The above cause is before the court on the motion of respondent for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., and motion of petitioner for judgment on the pleadings pursuant to Rule 12(c) of the Rules aforesaid.

This is a case wherein petitioner is seeking review by this court of the report and order of the United States Civil Service Commission in Docket No. 168, issued under date of February 3, 1950, In the Matter of Ralph J. Anderson and The State of Montana, and a determination made that the principal employment of said Ralph J. Anderson was in connection with Federally financed activities by reason of his services as Legal Adviser to the Department of Public Welfare of the State of Montana, which department was receiving Federal grants; that while so employed he violated Section 12(a) of the Hatch Political Activities Act, 5 U.S.C.A. § 118k, by making a radio address in opposition to the candidacy of a party nominee for the United States Senate.

It appears from the pleadings and briefs that the petition for review by the court was granted on February 21, 1950, which was within the 30-day limit from date of issuance on February 3, 1950, of the report and order of the United States Civil Service Commission, for appeal from the said order, and that the District Court for the District of Montana has jurisdiction to review the Commission's record, which extends to all questions of fact and law, as set forth in Section 12(c) of the Act. The delay occasioned in the disposal of this cause was due partly to the proceedings incident to the filing of certificate of disqualification by the first Judge sitting in said cause, and a subsequent transfer to the second Judge by whom it is now being considered on briefs submitted by counsel for the respective parties, and on a stipulation of facts.

Section 12(c) contains the following provision: "The court shall affirm the Commission's determination or order, or its modified determination or order, if the court determines that the same is in accordance with law. If the court determines that any such determination or order, or modified determination or order, is not in accordance with law, the court shall remand the proceeding to the Commission with directions either to make such determination or order as the court shall determine to be in accordance with law or to take such further proceedings as, in the opinion of the court, the law requires. * * *"

It is the contention of respondent that based upon the doctrine of "expertise" the courts not only accept but accord marked weight to determinations by such tribunals of questions of law falling within their special province, which it is claimed Congress has recognized by enactment of Sections 15 and 16 of the Hatch Act, 5 U.S.C.A. §§ 118l, 118m; that the highest judicial authority requires an administrative determination, such as that now under consideration, be upheld unless it is without "a reasonable basis in law"; and this, even though it is not "the only reasonable one", and though the Court might have reached a different conclusion "had the question arisen in the first instance in judicial proceedings"; and respondent asserts that the conclusions of the

Commission regarding jurisdiction were sound in law, and in accord with the intent of Congress.

Citing Unemployment Compensation Commission of Territory of Alaska v. Aragan, 329 U.S. 143, 67 S.Ct. 245, 250, 91 L.Ed. 136, which reversed the Circuit Court of Appeals, and reading in part as follows:

"To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings. The 'reviewing court's function is limited'. All that is needed to support the Commission's interpretation is that it has 'warrant in the record' and a 'reasonable basis in law'. * *. *

"Applying these tests, we are unable to say that the Commission's construction was irrational or without support in the record."

It is the determination of the Commission that the petitioner's "principal employment" within the meaning of Section 12(a) of the Hatch Act, was his State office, because "principal employment" as used in the statute does refer, contrary to the petitioner's contention, only to public employment.

It is admitted by respondent that petitioner devoted more time to private practice of law than to his public office, and that he earned more money from the former activity than from the latter; and respondent states it is denied by no one that his official employment was "full-time" in the sense that the duties of the office were not "piece work", that his tenure was continuous, and that he received a regular salary.

It is contended that the Commission's interpretation of the definition of "principal employment" brings Mr. Anderson's former office within its terms, with the conviction that it accords with the intent of Congress.

The contentions of petitioner are twofold:

(1) That he was not subject to the Hatch Act since his "principal employment" was not as Legal Adviser to the Department of Public Welfare.

(2) That the delivery of one radio address concerning one candidate for public office does not constitute taking an "active part in political management or in political campaigns."

Petitioner states that the Fleming case, Docket No. 2, Pike & Fischer, Adm.Law. 41b. 1–1 and 3, involved Highway Department employees of the State of Illinois whose sole and only employment was with the Highway Department, and the contention was made they were not subject to the Hatch Act for the reason that the greater part of their duties concerned the State system of highways which did not receive Federal grants rather than the Federal system of highways which did receive Federal aid; the Commission refused to adopt the so-called "scale theory" to see whether they were mainly concerned with Federally financed activities or State financed activities, and adopted the so-called "analytical interpretation". The Commission laid down the following test to determine whether or not a person holding a particular position was subject to the Act:

"First, 'what is his "principal employment",' i. e., position or job? * * Second, 'is that employment (position or job), "in connection with" a Federally financed activity?'."

That petitioner's "principal employment" was not as Legal Adviser to the Department of Public Welfare; rather, his principal employment was his private practice of the law.

That in the Kennedy case, Docket No. 150, Pike & Fischer, Adm.Law. 41b. 1–20, Kennedy was a member of the Unemployment Compensation Board of the State of Maryland and contended that his principal employment was in private business; the Commission assumed for the purpose of its decision that he devoted the majority of his time to private business and derived the major part of his income from private business,

and the Commission held he was subject to the Hatch Act and adopted the following rule:

" * * * the language 'principal employment' as used in Section 12(a) relates to employment with the State or local agency, not to employment which is not in the public service."

That the rule of the Commission as enunciated in the "mixed employment" case, In the Matter of E. H. McEachren, et al. and the State of Arizona, Dockets Nos. 115, 116 and 117; Law Week 2019, and also, In the Matter of Ambrose J. Kennedy, Dockets No. 150, July 18, 1946, Pike & Fischer, Adm.Law. 41b. 1–20, wherein the Commission had before it jurisdictional facts similar to the Anderson case herein, the Commission, in holding him subject to Section 12 of the Act, stated at pages 22 and 23 of Memorandum Brief of Respondent:

"B. The Matter of 'Mixed Employment'.

"This case affords an example of what we may designate as 'mixed employment,'—i. e., coincident public and private occupation. We have seen that throughout the time that Mr. Kennedy was a member of the Board of Unemployment Compensation, he was also engaged in insurance business; and that not only did his private enterprise yield greater remuneration than his public office, but that—at least during a certain period—it required more of his time and attention. We have pointed out that the stipulations do not show whether this condition prevailed during his entire term as member of the State Board. For the purpose of determining whether his position as a public official was his 'principal employment' within the meaning of Section 12(a) of the Hatch Act, we shall assume that it did.

"This is not the first case presenting a similar situation. We have never viewed the matter in the light in which the respondent sees it; and we find no justification for a

change in opinion. For many years the Commission has issued, and widely distributed, a publication designated Form 1236, which interprets restrictions upon political activities of Federal employees. After the 1940 amendment to the Hatch Act, it issued (and has made wide public distribution of) the companion Form 1236a, which interprets those provisions relating to political activities by State and local employees whose principal employment is in connection with activities financed, at least in part, by Federal funds. The following is quoted from Form 1236a:

" '6. Interpretations as to scope. —Some interpretations concerning the scope of the law, as developed by consideration of the history and congressional debates on the legislation in question as well as study and consideration of committee reports and interpretations by the Attorney General of the United States are stated below.

" '(a) Persons whose employment with a public agency is only temporary, part-time or intermittent, or on a per diem basis, not in any case occupying a substantial portion of the time and not affording the employee's principal means of livelihood, are subject to the law while in an active duty status, but not otherwise. * * * The period of active-duty embraces the whole period of status as a paid employee, rather than just the working hours of the day.

" '(b) Application of the principles covered by (a) makes officers and members of the National Guard subject to the statute while on active duty * * *.

* * * * *

" '(e) The language "principal employment" as used in Section 12 (a) relates to employment with the State or local agency, not to employment which is not in the public service.'

"The 'Principal Rule' was modified by what the Commission calls a 'Rule of Jurisdictional Limitation': 'An employee of a State or local agency is not within the 'principal employment' requirement of Section 12(a) of the Hatch Act, if the only duties in respect to any activity financed in whole or in part by Federal loans or grants which he performs as a normal and intended incident of his principal job or position, are so inconsequential * * * as to make applicable the maxim de minimum non curat lex. In the Matter of Todd and the State of Illinois, No. 29, Pike and Fischer Adm. Law, 41b. 1–5, 12 Law Week 2019."

It was found that Mr. Kennedy's duties on the Board of Unemployment Compensation certainly could not be regarded as "inconsequential".

Also cited as an applicable precedent is the decision entitled, "In the Matter of McEachren, et al., and the State of Arizona", No. 117, 12 Law Week 2418, wherein it was held that removal of three members of the Arizona Highway Commission was warranted on account of violations of Section 12(a). The Commission did not accept the respondents' contention that their principal employment was not such as to make them subject to the Act; although the maximum compensation (dependent upon the number of Commission sessions) which the respondents could receive was $1500 per annum, plus mileage in attending Commission sessions,— making it "apparent", the decision said, "that they are free to engage in private activities."

Respondents contend that this rule of "Mixed Employment" has been consistently reaffirmed in numerous cases before the Civil Service Commission. In the Matter of Harlan Hagen and the Housing Authority of Kings County, California, Docket No. 173 (1940); In the Matter of Joseph P. Sheridan and the Westmoreland County Housing Authority, Pennsylvania, Docket No. 154 (1949).

Petitioner argues that the "Mixed Employment" rule violates fundamental rules of statutory construction with respect to the interpretation of the language "principal employment" and including the word "public", thus making the statute read "principal public employment", which completely ignores and disregards the popular and well understood meaning of the word "employment"; citing the following authorities:

"'The rule which should be applied is established by many decisions. "The legislature must be presumed to use words in their known and ordinary signification." Levy's Lessee v. McCartee, 6 Pet. 102, 110, 8 L.Ed. 334 [337]. "The popular or received import of words furnishes the general rule for the interpretation of public laws." Maillard v. Lawrence, 16 How. 251, 261, 14 L. Ed. 925 [930]. And see United States v. Buffalo Natural Gas Fuel Co., 172 U.S. 339, 341, 19 S.Ct. 200, 43 L.Ed. 469 [470]; United States v. First Nat. Bank, 234 U.S. 245, 258, 34 S.Ct. 846, 58 L.Ed. 1298 [1303]; Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 [452], L.R.A. 1917F, 502, Ann.Cas. 1917B, 1168. As was said in Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 276, 69 L.Ed. 660 [662], "the plain, obvious and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and ingenuity and study of an acute and powerful intellect would discover." This rule is applied to taxing acts: De Ganay v. Lederer, 250 U.S. 376, 381, 39 S.Ct. 524, 63 L.Ed. 1042 [1044].' Old Colony R. Co. v. Commissioner of Int. Rev., 284 U.S. 552, 52 S.Ct. 211, 213, 76 L.Ed. 484, 489.

"Also other innumerable decisions of the United States Supreme Court Digest under Statutes, ☞ 165.

" 'Words in common use are to be given their natural plain, ordinary, and commonly understood meaning.' ": 59 C.J., Statutes, Section 577, p. 975. [See also 82 C.J.S., Statutes, § 48.]

" ' * * * it is a general rule of statutory construction that words of a statute will be interpreted in their ordinary acceptation and significance and the meaning commonly attributed to them. The rule is that such words are to be given their natural received, popular, approved, and recognized meaning.' 50 Am.Jur., Statutes, Section 238, pp. 228–230."

Webster's New International Dictionary, Second Edition, Unabridged, defines "employment" as follows:

"That which engages or occupies; that which consumes time or attention; also, an occupation, profession, or trade; service; Syn. Work, business, vocation, calling, trade, profession."

"The act of Congress must be read 'according to the natural and obvious import of the language, without resorting to subtle and forced construction for the purpose of either limiting or extending its operation.' United States v. Temple, 105 U.S. 97, 99 (26 L.Ed. 967 [968]). * * * To give the effect contended for * * * would be to amend the statute, not to construe or interpret it." Moore v. United States, 249 U.S. 487, 39 S. Ct. 322, 323, 63 L.Ed. 721, 722.

Petitioner states that substitution of the words "whose principal employment is" in lieu of "who exercises any function", evidences an intention to enact a provision different in effect than that called for by the original language; that Congress sought to exclude a body of persons from the Act who otherwise would have been subject to it; that it stands to reason the persons to be excluded were not merely those persons who might hold two State jobs, first; because such persons are very few in number; and, secondly, because there is no logical basis for assuming that such a limited exclusion was all that was intended; yet the construction placed on the Act by the Commission, for all practical purposes, completely nullifies this intention, contrary to the rule that statutes are to be so interpreted as to carry out the legislative intent.

"Courts should construe laws in harmony with the legislative intent and seek to carry out legislative purpose." Foster v. United States, 303 U.S. 118, 58 S.Ct. 424, 425, 82 L.Ed. 700.

"When possible, every statute should be rationally interpreted with the view of carrying out the legislative intent." Gulf States Steel Co. v. United States, 287 U.S. 32, 53 S.Ct. 69, 74, 77 L.Ed. 150.

" * * * the judicial duty rests upon this Court to give expression to the intendment of the law." Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 59 S.Ct. 191, 200, 83 L.Ed. 195.

That when Congress amended the bill to insert the term "principal employment", they intended that a comparison be made in some respect between that which is the greater and that which is the lesser. The word "principal" necessarily calls for such a weighing of the main as against the subordinate. By the "analytical interpretation" the Commission decided that such comparison was not to be made as between the activities in one job, i. e., activities in the one job using Federal funds being weighed against activities in the same job dealing exclusively with State funds. If that comparison be not adopted, then the only comparison left to be made, and which must be made in order to give effect to the word "principal", is to look to which job is the greater or lesser as between two jobs held by the same person. If the Commission is not going to weigh the activities in one job, then it must weigh the jobs as between two or more jobs. A comparison of some sort

is required by the use of the word "principal", and we are satisfied that it was the Congressional intent to exclude persons from the Act who had two jobs, the more important job being one not concerned with Federal Funds. Doubtless Congress had in mind excluding from the Act persons such as the members of the State Board of Public Welfare in Montana. They are appointed for a term. They receive $10.00 per diem and expenses. They can only receive $500.00 for services in any one year. Sec. 2, Chapter 82, Laws 1937. Thus they can only be employed for 50 days out of each year, but under the Commission's construction of the Act these officers are all within the provisions of the Act.

In Montana the members of the State Highway Commission are appointed for a term of years. They receive a per diem of $10 per day plus expenses. Sec. 1, Chapter 86, Laws of 1945. While there is no limitation as to the number of days they may meet, as a matter of practice they usually meet from two to five days. They too come within the provisions of the Act as construed by the Commission and are not excluded as was clearly intended by the amendment. If such members and petitioner are not excluded from the provisions of the Hatch Act, there is no one in Montana who can be within the provisions of the exclusion clause in question. The words "principal employment" are frittered away by construction. To confine the statute to the possible cases of persons holding two State jobs is to ignore the manifest purposes of the Act.

That the conclusion his principal employment was the private practice of law, and that his employment as legal adviser to the Department of Public Welfare was clearly subordinate, does not render meaningless subdivision (e) of the Act, 5 U.S.C.A. § 118k(e), as the Commission contends at page 8 of its report and order. Subdivision (e) provides that subsection (a): "* * * shall not apply to any officer or employee who exercises no functions in connection with any activity of a State or local agency which is financed in whole or in part by loans or grants made by the United States or by any Federal agency."

That the above quotation means if his employment, principal employment, is with the State agency, by reason of subdivision (e) he would still not be subject to the Hatch Act if his particular duties with the State agency did not involve the exercise of some function in respect to a federally financed activity, which is not the contention of petitioner here, but illustrates that subdivision (e) is not rendered meaningless by the construction applied by petitioner.

The petitioner is charged with having violated Section 12(a) of the Hatch Act, which reads as follows:

"(a) No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall (1) use his official authority or influence for the purpose of interfering with an election or a nomination for office, or affecting the result thereof, or (2) directly or indirectly coerce, attempt to coerce, command, or advise any other such officer or employee to pay, lend, or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency, or person for political purposes. No such officer or employee shall take any active part in political management or in political campaigns. All such persons shall retain the right to vote as they may choose and to express their opinions on all political subjects and candidates. * * *"

It is not respondent's contention that petitioner took an active part in "political management", but that he took an active part only in "political campaigns". The evidence shows that he was not supporting or opposing any par-

ticular party or group of candidates; his address concerned one candidate only and the trend of the address was peculiarly within his own knowledge and in which he expressed his opinion; but respondent contends the speech was made in the closing days of a bitterly contested campaign on October 30, 1946, to wean support from the Democratic candidate, and was a violent attack on the reputation and qualifications of the candidate and was publicized in the newspapers.

Subject to review in the light of the statutes involved the Civil Service Commission Rule 4.1, which is now germane to this case, reads as follows as an interpretation of Section 12(a):

"Persons in the executive branch shall retain the right to vote as they choose and to express their opinions on all political subjects and candidates, but such persons shall not use their official authority or influence for the purpose of interfering with an election or affecting the result thereof." Code of Federal Regulations, Supplement 1947, Title 5, Chapter 1.)

Attorney General Jackson on January 6, 1941, reviewed the legislative history of the Act, and summarized his conclusions by stating:

"It is my opinion, therefore, in answer to the question, that the Hatch Act does not restrict persons subject to its terms to a private expression of opinion on political subjects and candidates, but permits a public expression of such an opinion, provided it is not such as to constitute taking an active part in political management or in political campaigns."

The Supreme Court, in State of Oklahoma v. U. S. Civil Service Commission, 330 U.S. 127, at page 144, 67 S.Ct. 544, 91 L.Ed. 794, which is the only case before the Supreme Court involving State employees under Section 12(a), in upholding the constitutionality of Section 12(a) had before it Section 15 of the Hatch Act and by implication the acknowledged power of Congress to authorize the Civil Service Commission to set up standards of conduct on the part of State employees in so far as political activity is concerned. Respondent's memorandum brief at page 34 sets forth the following:

"In order to give the Civil Service Commission adequate standards to measure active participation in political activities, Congress adopted Section 15 of the Hatch Act, quoted above in note 1. By this section Congress made the test of political activity for state employees the same as the test then in effect for employees in the classified civil service. The Commission had at that time determined that 'service on or for any political committee or similar organization is prohibited.' This could only mean that service on such a committee was active participation in politics. Such determination was made a matter of record by Senator Hatch in charge of the bill during debate on the scope of political prohibition. Obviously the activities of Mr. Paris were covered by the purpose and language of Section 12. The words of section 12(a) requiring Mr. Paris' abstention from 'any active part in political management or political campaigns' are derived from Rule I of the Civil Service Commission and have persisted there since 1907 (86 Cong.Rec. 2938.)."

Section 15 reads as follows:

"Sec. 15. The provisions of this Act which prohibit persons to whom such provisions apply from taking any active part in political management or in political campaigns shall be deemed to prohibit the same activities on the part of such persons as the United States Civil Service Commission has heretofore determined are at the time this section takes effect prohibited on the part of employees in the classified civil service of the United States by the provisions of the civil-service rules

prohibiting such employees from taking any active part in political management or in political campaigns."

■ Where a statute is doubtful or ambiguous, administrative interpretations are given respectful consideration by the courts, but that rule applies only where the meaning of the statute is doubtful and cannot be applied to extend the plain meaning and effect of a statute. In United States v. Standard Brewery, 251 U.S. 210, 40 S.Ct. 139, 141, 64 L.Ed. 229, 235, the court said:

"While entitled to respect, as such decisions are, they cannot enlarge the meaning of a statute enacted by Congress. Administrative rulings cannot add to the terms of an act of Congress and make conduct criminal which such laws leave untouched. Waite v. Macy, 246 U.S. 606, 38 S.Ct. 395, 62 L.Ed. 892; United States v. George, 228 U.S. 14 [22], 25, 33 S.Ct. 412, 57 L.Ed. 712 [715]; United States v. United Verde Copper Co., 196 U.S. 207, 215, 25 S.Ct. 222, 49 L.Ed. 449 [452]."

The following quotation is from the December 1953 number of the American Bar Association Journal, Vol. 39, No. 12, p. 1098, and cites three pertinent and interesting cases and decisions under the Hatch Act by the Civil Service Commission, which illustrate how tenaciously it has adhered to its virtual amendment of the statute:

"Hatch Act * * * principal employment.

"Political activity by one whose 'principal employment' is 'in connection with an activity financed in whole or in part by loans or grants made by the United States or by a federal agency thereof' constitutes a violation of the Hatch Act (5 U.S. C.A. Sec. 118k). The United States Civil Service Commission has consistently held that the term 'principal employment' means 'principal public employment'.

"In a series of three decisions the Commission has been faced with difficult factual situations arising under this section of the statute.

"In one case the respondent was a nonsalaried commissioner of the Housing Authority of Newark, New Jersey. He was a candidate for representative in Congress in 1952. The Commission held that the Act applied to uncompensated positions as well as to nominal-paying and regular employment. The respondent also contended that his 'principal public employment' was as a member of the Essex County Rent Advisory Board, which was not a recipient of federal funds, and that therefore the Act did not apply to him. The Commission, however, rejected this contention and ruled that his job as a housing commissioner was more important. But since 'opinions on that can legitimately differ', removal was not ordered.

"Another case involved an attorney who also held the position of executive director of the DeWitt County (Illinois) Housing Authority at a salary of $150 a month. He had been a candidate for state's attorney in his county. The Commission was not impressed that the respondent was also attorney for a small village and for a township. His 'principal public employment' was with the housing authority, it declared. The Commission refused the respondent's argument that since he was an attorney his 'principal public employment' was as 'an officer of the court'. Congress did not intend to exempt lawyers from the Act, the Commission remarked, simply because they are accorded the designation 'officers of the court'. But in this case extenuating circumstances were held to preclude removal.

"In the third case the respondent had been director of the Mississippi Employment Security Commission, had been a candidate for presiden-

tial elector and had been active in the 1952 presidential campaign. He had resigned his state position at the time the charges were filed with the Civil Service Commission. The Commission held that the proceeding was not moot and found that there was a violation of the Act. The decision was effective, the Commission stated, to preclude his reemployment by Mississippi for eighteen months unless the state assumed the statutory alternative of deduction from future federal loans or grants.

"(Matter of Matturri; Matter of Porter; Matter of Lumpkin, U.S. C.S.C., August 21, 1953, Docket Nos. 190, 192, 194.)"

The Supreme Court of the United States on intent of Congress spoke in no uncertain terms when it said:

"It is not our purpose to relax the rule that debates in Congress are not appropriate or even reliable guides to the meaning of the language of an enactment. United States v. Trans-Missouri Freight Ass'n, 166 U.S. 290, 318, 17 S.Ct. 540, 41 L.Ed. 1007 [1019]. But the reports of a committee, including the bill as introduced, *changes made in the frame of the bill in the course of its passage*, and statements made by the committee chairman in charge of it, stand upon a different footing, and may be resorted to under proper qualifications. (Citing numerous cases.)" United States v. St. Paul, M. & M. R. Co., 247 U.S. 310, 318, 38 S.Ct. 525, 528, 62 L.Ed. 1130, 1134.

"To translate this Act by a process of interpretation into an equivalent of the bills Congress rejected is, we think, beyond the fair range of interpretation." Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 508–509, 65 S.Ct. 335, 344, 89 L.Ed. 414, 427.

One of respondent's contentions is that Congress intended to place the same restrictions on state employees dealing with federal loans and grants as on federal employees, and that "it enacted Section 12(a), applicable to state and local employees as the counterpart of section 9(a) [5 U.S.C.A. § 118i], applicable to federal employees." In his short reply brief the petitioner has furnished such a complete answer to that argument, with authorities, that it seems unnecessary to extend this decision by repeating it in detail here.

The petitioner has been for many years a prominent attorney and at one time was Associate Justice of the Supreme Court of Montana, and being convinced that his opinion in respect to the statute in question is sound, commenced this proceeding, apparently in the firm belief, based upon his knowledge and experience, that the prohibitions of the statute did not apply to him for the reasons set forth in his able argument, which has been vigorously opposed by learned counsel for the Commission. The court has endeavored to give careful consideration to the arguments of counsel in respect to the law and stipulation of facts and is now of the opinion that the respondent is within the letter of the law as applied to the facts in this case in deciding that petitioner violated the provisions of Section 12(a), in taking an active part in a political campaign, unless the statute in other respects affords relief, the proof showing that seventy-five per cent of his employment was in the active practice of his profession as a lawyer, while only twenty-five per cent could be attributed to his employment as legal adviser to the Department of Public Welfare of the State of Montana, which was the recipient of grants from the Federal Government, so that the principal question for decision would seem to be the proper interpretation of Section 12(a) aforesaid.

The Commission has in effect amended the statute by adding the word "public", making it read: "principal public employment," thereby changing the statutory wording entirely and minimizing

the importance of the word "principal", since it is unusual to find a person holding two public offices. Petitioner states that he devoted three-fourths of his time to the private practice of law and derived four-fifths of his income therefrom.

But to turn to the record of the enactment of Section 12(a) by Congress. It appears that the Senate first had the section in question under consideration, and as it passed the Senate and was sent to the House read as follows:

"No officer or employee of any state or local agency who exercises any function in connection with any activity which is financed in whole or in part * * *." Senate 3046, Vol. 86, Part. III, Congressional Record, page 2987.

It will be noted that the words "principal employment" do not appear in the bill as it passed the Senate.

The House of Representatives changed the wording of the section and the meaning thereof, as follows: "Whose principal employment is * * *," as a substitute for the Senate wording of "who exercises any function," etc., and, of course, the Senate agreed to that amendment, otherwise Section 12(a) could not have been enacted into law.

If the Senate wording of the section had been accepted by the House, then without question the petitioner would have been included and properly held to be a violator of the Act, since this court holds that he was engaged in a political campaign with the cooperation of a political committee that took care of the radio expense of his broadcast. But that is not the case here before the court, and the amendment adopted in the House of "whose principal employment is" changed completely the meaning of that part of Section 12(a), the wording of which is so plain and easily understandable that the array of authorities cited as to interpretation and construction of statutes would seem to be unnecessary.

It is difficult to understand how the meaning and intent of Congress could be more clearly expressed. To change the statute to read "whose principal public employment," etc., would seem to be a usurpation of Congressional authority, for it changes the wording and meaning of the section by the insertion of the word "public". It is evident that Congress intended to give a person, whose minor employment was by the Government, an opportunity as a citizen to take part in political campaigns if he came within the language and clear intendment of the Act as amended by the House and thereafter approved by the Senate.

As the case now stands, the Commission has read language into the statute which changes completely the meaning of the words put there by Congress. The Commission has apparently gone on for an extended period of time trying to justify in its briefs and decisions in different cases before it the adoption of the words "principal public employment" which do not appear in the statute, and wherein the language as written by Congress is "principal employment". The court is unable to find any doubtful meaning in Section 12(a) of the statute in question and now in force. If the views herein expressed do no more than to bring this proceeding before a higher court for interpretation of Section 12 (a) of the Hatch Act, a distinguishing mark between legislative and administrative authority may be more clearly established.

Accordingly, in the opinion of the court, the motion of the respondent should be denied and that of petitioner granted, and such is the order of the court herein, with the further order that the proceedings be remanded to the Commission, as required by Section 12 (c) of said Act, to be governed by the foregoing decision. Exceptions allowed counsel.