Sam M. ENGELHARDT, Jr., and the
State of Alabama, Petitioners,

v.

UNITED STATES CIVIL SERVICE COM-
MISSION, Respondent.

Civ. A. No. 1727–N.

United States District Court
M. D. Alabama, N. D.

Aug. 31, 1961.

Smith & Moore, Montgomery, Ala., for petitioners.

Hartwell Davis, U. S. Atty., Montgomery, Ala., and Philip J. LaMacchia, Atty., U. S. Civil Service Commission, Washington, D. C., for respondent.

JOHNSON, District Judge.

The petitioners, Sam M. Engelhardt, Jr., and the State of Alabama, as authorized by § 118k, Title 5 United States Code Annotated, have filed their written petition with this Court, wherein they seek a review of the Report and Order of the United States Civil Service Commission, that Report and Order having been made and entered by said Commission on May 6, 1961, in this case, which was styled on the records of the Commission as "In the Matter of Sam M. Engelhardt, Jr. and the State of Alabama, Docket No. 238." The petitioners seek to have this Court reverse the order of the Civil Service Commission, claiming that the order of the Commission is erroneous in that:

(1) The Commission improperly construed the terms "loans or grants" as used in § 12(a) of the Hatch Act.

(2) The Commission improperly construed the exemptions contained in § 12 (a) of the Hatch Act by holding that said exemptions did not apply to the Alabama Highway Director, Sam M. Engelhardt, Jr., and by failing to recognize that the application of said Act to an officer such as Engelhardt was unconstitutional.

(3) The Commission erred in failing to find that Engelhardt's connection "with any activity * * * financed * * * by the United States" was minimal and therefore controlled by the legal principle of *de minimis non curat lex*.

The United States Civil Service Commission appears, admits the jurisdiction of this Court, and pleads the general issue by saying that the order of the Civil Service Commission of May 6, 1961, was proper, both as to questions of fact and questions of law. As required by § 118k (c), there has been filed with this Court a certified transcript of the complete record upon which the order of the Civil Service Commission that is now complained of was based. Petitioners do not complain of any of the findings of fact as set out in the order of the Civil Service Commission and have not sought to have any findings of fact as made by the Commission and as set out in its order of May 6, 1961, stricken, amended, or supplemented.

The United States Civil Service Commission in a Letter of Charges and Notice dated August 1, 1960, charged that Sam M. Engelhardt, Jr., was the State Highway Director for the Alabama State Highway Department by appointment by the Governor of the State of Alabama from January 20, 1959 to the date of said charges.[1] The Commission further charged that Engelhardt's principal employment was in connection with an activity financed in whole or in part by grants made by the United States and that while so employed and engaged Mr. Engelhardt took an active part in political management and in political campaigns. Specifically, the Commission charged that Mr. Engelhardt held the office of Chairman of the State Democratic Executive Committee of the Democratic Party of Alabama during all the time pertinent to this litigation; that Mr. Engelhardt called and presided over meetings of the State Democratic Executive Committee on March 20, 1959 and on January 23, 1960; that he also presided over meetings of the Executive Committee members for the Fourth and Fifth Congressional Districts of Alabama on March 11, 1959; and that Mr. Engelhardt used his office in the State Highway Department Building to conduct the business of the Democratic Executive Committee, all as prohibited by § 12 of the Hatch Political Activity Act, codified as § 118k(a) of Title 5 United States Code Annotated.

Upon the record now presented to this Court, it appears that Sam M. Engelhardt, Jr., was appointed by the Governor of the State of Alabama and qualified to act as State Highway Director for the

---

1. It is stipulated and agreed by and between the parties that Mr. Engelhardt continues to serve in the same capacity.

State of Alabama on January 20, 1959; that Mr. Engelhardt has served continuously, full time, as said director since the date of his appointment, at an annual salary of $15,000. It further appears that on or about the 19th day of January, 1959, Mr. Engelhardt was elected Chairman of the State Executive Committee of the Democratic Party of Alabama, a position he has also held continuously since that date. The record further reflects that since January, 1959, Mr. Engelhardt, as Chairman of the Executive Committee of the Democratic Party of Alabama, has officially informed the Secretary of State for the State of Alabama of qualified candidates of the Democratic Party for the State of Alabama and for federal offices; that he has officially informed the Secretary of State of the number of votes received by, the nomination of, and the election of respective candidates for party nomination to public and party offices in the Democratic Party primary elections held in 1960; that he has officially informed and authorized the Secretary of State to withdraw the names of certain persons who had been previously certified as candidates for the Democratic Party; and that he has called and presided over meetings of the Executive Committee of the Democratic Party of Alabama, in one of which the "Rules of the Democratic Party of Alabama" were established and adopted. The evidence in this case further reflects that Mr. Engelhardt called and presided over a meeting of the Fourth and Fifth Congressional Districts for the State of Alabama on March 11, 1959, which meeting was for the purpose of nominating a democratic nominee for a State senatorial district in which a vacancy existed. The evidence was without dispute that the State Executive Committee, headed by Mr. Engelhardt, prescribed the rules for the Democratic Party primary election in May, 1960. Mr. Engelhardt presided over the meeting which prescribed such rules, the meeting being held January 20, 1960. The evidence further discloses that the Democratic Executive Committee's stationery lists the office of the Committee as "116 Highway Building, Montgomery, Alabama"; further, that an individual by the name of Mrs. Nell Benton was listed on the official stationery as treasurer of the Executive Committee. Neither Mr. Engelhardt nor Mrs. Nell Benton testified before the Commission. It was revealed, however, that Mrs. Benton was a State of Alabama employee, who served as secretary to Mr. Engelhardt in his position as the Alabama State Highway Director.

The evidence in this case clearly reflects that the State of Alabama Highway Department, headed by Mr. Engelhardt, is responsible for the construction and repair of roads in the State of Alabama; that during the period pertinent to this litigation the State Highway Department of Alabama has engaged in the construction of highways under agreements with the United States Department of Commerce, Bureau of Public Roads, these agreements being signed on behalf of the State Highway Department by Mr. Engelhardt. Under these agreements, the State of Alabama has been reimbursed an agreed portion of the cost of the construction, which it has paid to the contractors building the roads within the State. It appears without dispute that in a substantial number of specific projects the amount paid to the State of Alabama by the United States Government has amounted to 90% of the cost of the construction of the road. In other projects, the amount the State has been reimbursed by the United States Government was for 50% of the cost of the road. It appears from the evidence in this case that these "Federal-aid" projects are required to meet certain standards of the Federal Government, with the State of Alabama Highway Department being the agency primarily responsible for the completion of each project. The funds reimbursed to the State of Alabama on such projects are paid to the State Treasurer, the State Highway Department, itself, not directly handling any of the money. All payments out of such reimbursed funds are made by the Treasurer for the State of Alabama, who maintains

various Highway Department accounts against which the funds are charged or credited upon notification from the Alabama Highway Department. It further appears that during the period from January, 1959 to June, 1960, over fifty-two million dollars was paid to the State of Alabama by the United States Government as a result of specific agreements for the construction of roads in Alabama by the State Highway Department. In addition to the above practice of reimbursement, the State of Alabama has during the period pertinent to this case received what was described as a "revolving fund" under procedures authorized by the Congress of the United States, in order that there might be no delay in road construction by reason of inadequate State finances. This money, insofar as it is pertinent to this case, was in excess of four million dollars and was repaid, as required by the law, to the United States Government in June, 1959.

The provisions of the Hatch Political Activity Act, herein referred to as § 118k (a), Title 5 United States Code Annotated, under which Mr. Engelhardt was charged, are as follows:

"No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall (1) use his official authority or influence for the purpose of interfering with an election or a nomination for office, or affecting the result thereof, or (2) directly or indirectly coerce, attempt to coerce, command, or advise any other such officer or employee to pay, lend, or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency, or person for political purposes. No such officer or employee shall take any active part in political management or in political campaigns. All such persons shall retain the right to vote as they may choose and to express their

opinions on all political subjects and candidates. For the purposes of the second sentence of this subsection, the term 'officer or employee' shall not be construed to include (1) the Governor or the Lieutenant Governor of any State or any person who is authorized by law to act as Governor, or the mayor of any city; (2) duly elected heads of executive departments of any State or municipality who are not classified under a State or municipal merit or civil-service system; (3) officers holding elective offices."

The pertinent provisions of said Act conferring jurisdiction of this case on this Court and authorizing this review, are set out in § 12(c) [§ 118k(c), Title 5 U.S.C.A.] thereof:

"Any party aggrieved by any determination or order of the Commission under subsection (b) may, within thirty days after the mailing of notice of such determination or order, institute proceedings for the review thereof by filing a written petition in the district court of the United States for the district in which such officer or employee resides; but the commencement of such proceedings shall not operate as a stay of such determination or order unless (1) it is specifically so ordered by the court, and (2) such officer or employee is suspended from his office or employment during the pendency of such proceedings. A copy of such petition shall forthwith be served upon the Commission, and thereupon the Commission, shall certify and file in the court a transcript of the record upon which the determination or the order complained of was made. The review by the court shall be on the record entire, including all of the evidence taken on the hearing, and shall extend to questions of fact and questions of law. If application is made to the court for leave to adduce additional evidence, and it is shown to the satisfaction of the court that such addi-

tional evidence may materially affect the result of the proceedings and that there were reasonable grounds for failure to adduce such evidence in the hearing before the Commission, the court may direct such additional evidence to be taken before the Commission in such manner and upon such terms and conditions as to the court may seem proper. The Commission may modify its findings of fact or its determination or order by reason of the additional evidence so taken and shall file with the court such modified findings, determination, or order, and any such modified findings of fact, if supported by substantial evidence, shall be conclusive. The court shall affirm the Commission's determination or order, or its modified determination or order, if the court determines that the same is in accordance with law. If the court determines that any such determination or order, or modified determination or order, is not in accordance with law, the court shall remand the proceeding to the Commission with directions either to make such determination or order as the court shall determine to be in accordance with law or to take such further proceedings as, in the opinion of the court, the law requires. The judgment and decree of the court shall be final, subject to review by the appropriate circuit court of appeals as in other cases, and the judgment and decree of such circuit court of appeals shall be final, subject to review by the Supreme Court of the United States on certiorari or certification as provided in sections 346 and 347 of Title 28. If any provision of this subsection is held to be invalid as applied to any party with respect to any determination or order of the Commission, such determination or order shall thereupon become final and effective as to such party in the same manner as if such provision had not been enacted."

■■ The scope of the Court's review under this last-quoted statute extends to both questions of fact and questions of law. Review is limited to an examination of the facts and law as found and applied by the Commission for the purpose of determining whether the Commission abused its discretion. State of Oklahoma v. United States Civil Service Commission, 10 Cir., 153 F.2d 280; affirmed State of Oklahoma v. Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794; State of Utah v. United States, et al., 286 F.2d 30, certiorari denied 1961 at 366 U.S. 918, 81 S.Ct. 1093, 6 L.Ed.2d 240. In this particular case, since the petitioners do not dispute the findings of fact as made by the Commission, only questions of law are presented. Matturi v. United States Civil Service Commission, D.C., 130 F.Supp. 15; affirmed Matturri v. United States Civil Service Commission, 3 Cir., 229 F. 2d 435.

The petitioners very candidly admit that their appeal to this court has been carefully tailored in an effort to make their case fit the district court case of Palmer v. United States Civil Service Commission, D.C.Ill.1961, 191 F.Supp. 495. There the district court held that the Hatch Act could not be used to place an Illinois Director of Conservation under recall because of political activity, since such an application of the Act in that instance would be in violation of vested rights guaranteed by the separation of powers provisions of both the federal and state Constitutions. The Court in the Palmer case further held that where evidence only reflected that the conservation director spent less than .063% of his time on federally aided projects, the principal of *de minimis non curat lex* was applicable.

■ There is no question but that the person charged with violating § 12(a) of the Hatch Act must be principally employed in connection with activity which is financed in whole or in part by loans or grants from the United States, or some United States agency. That person must be "principally employed" in

connection with such activity. Here, it is quite obvious that the position of Engelhardt as Chief Executive Officer of the Alabama Highway Department constitutes his principal employment.[2]

In this case, the evidence shows beyond any question that the Alabama Highway Department—during the times pertinent to this case—was "financed * * * in part by loans or grants made by the United States." Any state desiring to secure such funds under 23 U.S.C.A. § 101 et seq., must first apply for same and then follow and comply with certain requirements. Upon the approval of such a request by the United States, there is created a "contractual obligation" on the part of the Federal Government (Title 23, § 106, U.S.C.A.). All such funds advanced—over fifty million in this case—may be used for no purpose except highway construction and maintenance projects. Petitioners' argument that such funds are neither "loans" nor "grants" is not well taken. Even the Palmer case, supra, held otherwise. See also State of Oklahoma v. United States Civil Service Commission, supra.

As to Mr. Engelhardt's "active part in political management or in political campaigns," this Court would be naive indeed if it held that the head of the Alabama Democratic Executive Committee was not so engaged. The evidence in this respect is undisputed.

Thus it appears that Mr. Engelhardt was (and is) an "officer or employee" of the State of Alabama "whose principal employment is in connection with * * activity which is financed * * * in part by loans or grants made by the United States." It further appears that Mr. Engelhardt during the times pertinent to this case has taken an "active part in political management or in politi-

cal campaigns." Such squarely constitutes a violation of § 12(a) of the Hatch Act. State of Oklahoma v. United States Civil Service Commission, supra, and State of Utah v. United States et al., supra.

The only issue remaining is the contention on the part of the petitioners that § 12(a) of the Act is unconstitutional as applied to Mr. Engelhardt. The sole authority cited by petitioners for such a proposition is Palmer v. United States Civil Service Commission, supra. Such a contention ignores the Supreme Court case of State of Oklahoma v. United States Civil Service Commission, supra. In that case the Supreme Court specifically held that "the United States * * * does have power to fix the terms upon which its money allotments to states shall be disbursed" and "[t]he Tenth Amendment does not forbid the exercise of this power in the way that Congress has proceeded in this case." 330 U.S. at page 143, 67 S.Ct. at page 553, 91 L.Ed. 794. The Court continued:

"As pointed out in United States v. Darby, 312 U.S. 100, 124, 657, [61 S.Ct. 451, 462, 85 L.Ed. 609, 132 A.L.R. 1430], the Tenth Amendment has been consistently construed 'as not depriving the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end.' The end sought by Congress through the Hatch Act is better public service by requiring those who administer funds for national needs to abstain from active political partisanship. So even though the action taken by Congress does have effect upon certain activities within the state, it has never been thought that such effect made the federal act invalid. As nothing in this record

2. Title 23, § 2, Code of Alabama, Recompiled 1958, states: "The chief executive officer of the highway department shall be known as the highway director, who shall be appointed by the governor and shall hold office at the pleasure of the governor; all the powers, authority, and duties vested in the highway department shall be exercised by the highway director."

shows any attempt to suspend Mr. Paris from his duties as a member of the State Highway Commission, we are not called upon to deal with the assertion of Oklahoma that a state officer may be suspended by a federal court if § 12 is valid. There is an adequate separability clause. No penalty was imposed upon the state. A hearing was had, conformably to § 12, and the conclusion was reached that Mr. Paris' active participation in politics justified his removal from membership on the Highway Commission. Oklahoma chose not to remove him. We do not see any violation of the state's sovereignty in the hearing or order. Oklahoma adopted the 'simple expedient' of not yielding to what she urges is federal coercion. Compare [Commonwealth of] Massachusetts v. Mellon, 262 U.S. 447, 482, [43 S. Ct. 597, 599, 67 L.Ed. 1078]. The offer of benefits to a state by the United States dependent upon cooperation by the state with federal plans, assumedly for the general welfare, is not unusual."

Thus, the Supreme Court has answered, in favor of the validity of the Hatch Act, every major assertion of unconstitutionality raised here by the petitioners. In this connection, see also United Public Workers of America v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754. Any contrary reasoning or conclusion in the Palmer case is specifically rejected by this Court. In the Palmer case, it is quite apparent that the district court strained for over fifty reported pages in its effort to distinguish the case then before it from the Oklahoma case. In the opinion of this Court, the "distinction" finally arrived at was unwarranted and unrealistic.[3]

For the foregoing reasons, this Court concludes that the findings and conclusions of the United States Civil Service Commission in its order of May 6, 1961, were warranted by the evidence, and were fair and in accordance with the law. A formal order will be entered affirming the Commission's determination and order.

3. The Palmer case is presently pending appeal before the United States Court of Appeals for the Seventh Circuit, Docket No. 13382.