James P. SMYTH and Sheboygan County, Petitioners,

v.

UNITED STATES CIVIL SERVICE COMMISSION, Respondent.

No. 65-C-333.

United States District Court
E. D. Wisconsin.

Sept. 20, 1968.

See also D.C., 286 F.Supp. 312.

Alexander Hopp, Corp. Counsel, Sheboygan, Wis., for petitioners.

James B. Brennan, U. S. Atty., Milwaukee, Wis., for respondent.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The petitioner, James P. Smyth, was charged by the civil service commission with a violation of section 12(a) of the Hatch Act, 5 U.S.C. § 118k (now 5 U.S.C. § 1502). The petitioner answered the charges, and the case was heard on April 13, 1965. On November 17, 1965, the commission issued its final report and order. The conclusion of that report read as follows:

"It is found that the respondent, James P. Smyth, was principally employed from March 11, 1964, to September 8, 1964, in connection with an activity financed in whole or in part by loans or grants made by the United States, that during this period he took an active part in political management or in political campaigns as charged, in violation of Section 12(a) of the Hatch Political Activities Act of 1939, as amended, and that the violation warrants removal from employment."

Mr. Smyth then petitioned this court for a review of the commission's determination under 5 U.S.C. § 118k (c) (now 5 U.S.C. § 1508). The civil service commission then filed a motion for summary judgment. The entire matter is now set for disposition, there being no issue of material fact although the parties dispute the implications of the facts.

The letter of charges issued by the commission alleged: that Mr. Smyth was the director of the Sheboygan county civil defense program; that this program was financed in whole or in part by loans or grants made by the United States or by a federal agency; and that Mr. Smyth's position as civil defense director was at all relevant times his "principal employment". It was further charged that while so employed, Mr. Smyth "took an active part in politi-

cal management or in political campaigns" in violation of the act. The specific acts complained of were that:

1. On or about March 11, 1964, he announced he was a candidate for the Republican Party nomination for the office of county clerk in the primary election to be held on September 8, 1964, by personally submitting a news release to that effect to radio station WKTS, Sheboygan, and as a result said radio station WKTS broadcast a news story concerning his candidacy on or about March 11, 1964.

2. On or about May 15, 1964, he personally contracted with radio station WHBL, Sheboygan, to have broadcast 40 radio spot announcements in behalf of and concerning his candidacy for the Republican Party nomination for the office of county clerk, and as a result, 20 radio spot announcements as agreed to by him in behalf of his candidacy were broadcast by radio station WHBL prior to the primary election held on September 8, 1964.

3. In June and July, 1964, he circulated a nominating petition in support of his candidacy for the Republican nomination for county clerk of Sheboygan county in the primary election held on September 8, 1964.

4. On July 10, 1964, he filed with the county clerk of Sheboygan a declaration of candidacy and nomination papers for the Republican Party nomination for the office of county clerk, to be voted for in the Republican Party primary election to be held September 8, 1964.

5. In the September 8, 1964 primary election, he was a candidate for the Republican Party nomination for the office of county clerk, and his name appeared on the ballot as a candidate for that office.

The petitioner admitted that the Sheboygan county civil defense program was financed in whole or in part by loans

or grants by the United States or by a federal agency. He also admitted that he did each of the five acts alleged above. The first two acts occurred before June 1, 1964, at which time the position of civil defense director was changed from full to part-time. The last three acts occurred while Mr. Smyth was the part-time director.

Mr. Smyth claims that the commission's findings are erroneous in the following respects:

1. It was erroneous to find that the acts committed while Mr. Smyth was full time director amounted to an "active part in political management or in political campaigns" in violation of the act.

2. It was erroneous to find that Mr. Smyth's "principal employment" after June 1, 1964 was as civil defense director. (If the petitioner is correct in this contention, then his acts *after* this date are not subject to the act.)

3. It was erroneous to remove Mr. Smyth from his position as civil defense director.

This court is given powers of review over civil service commission findings of a Hatch Act violation by 5 U.S.C. § 118k (c) (now 5 U.S.C. § 1508). That section states that

"The court shall review the entire record including questions of fact and questions of law. * * * The court shall affirm the determination or order * * * if the court determines that it is in accordance with law."

■■ The court's review, therefore, is quite narrow; the commission's findings must be affirmed if they were "in accordance with law". State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1946); In re Ramshaw, 266 F.Supp. 73 (D. Idaho, 1967); Engelhardt v. United States Civil Service Comm., 197 F.Supp. 806 (D. Ala. 1961). The review extends to both questions of law and fact, but it is limited to an examination of the facts as found by the commission to determine whether the commission abused its discretion. Engelhardt v. United States Civil Service Comm., supra.

I conclude that the entire determination was in accordance with law and that there was no abuse of discretion.

Mr. Smyth became the full-time civil defense director on January 1, 1963. While the job remained a full-time position (prior to June 1, 1964), this was his principal employment. He contends that while the job was a full-time one, his activities did not violate the Hatch act.

In March, 1964, Mr. Smyth submitted a news release to radio station WKTS in Sheboygan, stating that it was his intention to seek the Republican nomination for county clerk. On the basis of that release, the station broadcast a news story concerning his candidacy on March 11, 1964. Further, on May 15, 1965, Mr. Smyth contracted with radio station WHBL in Sheboygan to have broadcast 40 radio spot announcements on behalf of his candidacy.

Mr. Smyth contends that these activities did not violate the act, and he testified that he did not really consider himself a candidate until sometime after June 1. He also testified that he made no attempt to perform what he termed any political action until the end of June.

■ Mr. Smyth argues that his announcement was a mere expression of an "intention" and that his reservation of radio time only gave him a cancellable right in the event that he did in fact become a candidate. In my opinion, the commission's determination that Mr. Smyth's activities prior to June 1, 1964 amounted to "an active part in political management or in political campaigns" was in accordance with law and not an abuse of discretion. The evidence before the commission substantiated this finding.

The petitioner urges that the commission erred in holding that Mr. Smyth's principal employment subse-

quent to June 1, 1964 was as the county director of civil defense. Since the Hatch act only applies to one whose "principal employment" is in a public position meeting the requirements of 5 U.S.C. § 118k (now 5 U.S.C. § 1501(4)), if Mr. Smyth is correct, his political activities during this period would not be subject to the act.

The question raised is whether a part-time position can be a person's principal employment within the act. The cases dealing with the definition of principal employment under the act are of little help to us. See Matturi v. United States Civil Service Commission, 130 F.Supp. 15 (D. New Jersey 1955), aff'd 229 F.2d 435 (3rd Cir. 1956) and Engelhardt v. United States Civil Service Commission, 197 F.Supp. 806 (D. Ala. 1961). See also Anderson v. United States Civil Service Commission, 119 F. Supp. 567 (D. Montana 1954). In *Anderson,* it is stated at pages 572–573 that "A comparison of some sort is required by the use of the word 'principal', and we are satisfied that it was the Congressional intent to exclude persons from the Act who had two jobs, the more important job being one not concerned with Federal Funds."

▇ I see no fundamental barrier to holding that a part-time position is a person's principal employment within the meaning of the Hatch act. If one has no full-time job, his part-time job could qualify as his principal employment.

Mr. Smyth attempted to prove that when the position was changed to part-time and the salary was reduced by slightly more than 50 percent (to $250.-00 per month), he spent only about 30 percent of his time as civil defense director. He was unable, however, to specify the number of hours he worked at this job each week; in contrast, he related that when the position was full-time, he would spend between 45–75 hours on the job each week.

The petitioner attempted to prove that other activities took over one-half of his time, and that these activities constituted his principal employment. Unless one of these activities dominated, it would not be his principal employment. Merely showing that a group of activities together took over 50 percent of a person's time would not establish that any one of them was his principal employment.

Mr. Smyth testified that he was a consultant to food brokerage factors in Wisconsin, for which he was paid $1000.00 per month during all of 1964. He also stated that his other responsibilities included real estate development and other investments. It seems clear, however, that Mr. Smyth thought that his consulting endeavors were his principal employment. However, he refused to reveal for whom he worked, how much time he devoted to that occupation, or what he did in that capacity. He claimed that these questions invaded his privacy and that if he answered these questions, he would violate his employer's confidence. At this point in the transcript, the following statement was made by the hearing examiner to Mr. Smyth's attorney:

"Your defense is that he was not principally employed for a given period of time as Civil Defense Director. Now, if you can establish that he was not principally employed for that period involved, why, it's a legal defense to the charges. It is not enough to say or state that the conclusion that he was not principally employed as Civil Defense Director and that he was principally employed as a food broker or consultant without giving some underlying fact so that we can weigh or decide on how much weight to give the testimony of the witness." (Tr 72).

Mr. Smyth continued his refusal to identify his employers and the facts surrounding that employment, and the commission found against his contentions. In its final report, the commission noted that there is no evidentiary privilege to withhold evidence or refuse

to disclose material information peculiarly within a party's knowledge on the ground of invasion of privacy. Even the privilege which attaches to confidential communications between attorney and client does not extend to the fact of retainer nor the amount of retainer. See McCormick, Evidence, § 94 at 188–89.

The burden of proof at the commission hearing was on the government, and the commission's final report recognizes this. However, the burden of going forward with the evidence in this instance fell on Mr. Smyth; it was Mr. Smyth who possessed the information which was not available to the government. See Selma, R. & D. R. Co. v. United States, 139 U.S. 560, 11 S.Ct. 638, 35 L.Ed. 266 (1891). If the one who has this exclusive knowledge fails to produce the evidence, an inference is raised that the evidence, if produced, would be unfavorable to him. See United States v. Denver and Rio Grande Railroad Company, 191 U.S. 84, 24 S.Ct. 33, 48 L.Ed. 106.

In addition to this, the commission correctly concluded that the government had, in fact, established its initial burden of proof by substantial evidence. While the evidence did not provide an iron-clad case, it was substantial, and there was no abuse of discretion in holding that Mr. Smyth's principal employment was as civil defense director.

The petitioner also claims that the commission erred in removing Mr. Smyth from his position. The transcript of the commission proceedings shows that the commissioners carefully considered the entire record before ordering the removal. In my opinion, this determination was not an abuse of discretion. See State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1946).

Therefore, it is ordered that the respondent's motion for summary judgment be and hereby is granted, and the determination of the civil service commission be and hereby is affirmed.