WILLIAM F. EICH, Chairman, Public Service Commission
You have inquired whether sec. 15.79, Stats., prohibits a public service commissioner from being a delegate to a district, state or national political party convention. I note that public service commissioners hold unclassified positions in Wisconsin civil service. Sec. 16.08 (2), Stats. These positions are not subject to restrictions on political activity imposed on classified positions under sec. 16.30, Stats., commonly known as the "Little Hatch Act."
Section 15.79, Stats., reads as follows:
"Public service commission; creation. There is created a public service commission. No member of the commission may have a financial interest in a railroad, public utility or motor carrier. If any member voluntarily becomes so interested, his office thereby shall become vacant. If he involuntarily becomes so interested, he shall divest himself of such interest within a reasonable time; falling to do so, his office shall became vacant. No commissioner may serve on or under any committee of apolitical party. Each commissioner shall hold office until his successor is appointed and qualified." (Emphasis supplied)
Prohibitions against political activity by public employes has undergone considerable change from the standpoint of constitutional law since Justice Holmes uttered the well-known epigram, "The petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman."McAuliffe v. Mayor, Etc., of City of New Bedford (1892),155 Mass. 216, 29 N.E. 517.
The distinction between a right and a privilege which underlies Justice Holmes' quotation has been modified. 81 Harv. L. Rev. 1439, 1445. In Sherbert v. Verner (1963), 374 U.S. 398,83 S.Ct. 1790, 10 L.ed. 2d 965, the court held: *Page 267 
"It is too late in the day to doubt that the liberties of religion and expression may be infringed by the denial of or placing of conditions upon a benefit or a privilege."374 U.S. at 404, 83 S.Ct. at 1794.
The Sherbert decision has been used as a basis in other jurisdictions for requiring that statutes limiting political activity of public employes be narrowly drawn to avoid invalid restrictions on freedom of expression and association. Bagley v.Washington Township Hospital District (1966), 55 Cal. Rptr. 401,421 P.2d 409; Minjelly v. State (1966), 242 Ore. 490, 411 P.2d 69.
However, there is little doubt that a state may, as a condition of employment, require reasonable, non-discriminatory restrictions upon activities of its employes to promote efficiency and integrity of public service. United Public Workersv. Mitchell (1947), 330 U.S. 75, 67 S.Ct. 556, 91 L.ed. 754;State of Oklahoma v. United States Civil Sery. Com'n. (1947),330 U.S. 127, 67 S.Ct. 544, 91 L.ed. 794.
The decision in United Public Workers v. Mitchell, cited above, has never been questioned by a federal court. Federal courts have a duty to follow a governing decision of the Supreme Court unless it has been clearly eroded by subsequent decisions which dictate a contrary result. Wisconsin State Emp. Ass'n. v. Wisconsin Nat.Resources Bd. (1969) W.D. Wis.), 298 F. Supp. 339, 350.
Further, it might be noted that the Hatch Act has been rigorously applied to state public employes participating in programs receiving federal funding. Osheim v. United States CivilService Commission (1969 E.D. Wis.), 299 F. Supp. 317; Smyth v.United States Civil Service Commission (1968 E.D. Wis.),291 F. Supp. 568.
However, a statute proscribing political activity on the part of a public employe must be precise. Keyishian v. Board ofRegents of the University of the State of New York (1967),385 U.S. 589, 603, 87 S.Ct. 675, 17 L.ed. 2d 629.
Against this constitutional backdrop, the question now arises as to the meaning of the phrase "committee of a political party" as used in sec. 15.79, Stats. *Page 268 
One source of interpretation of the phrase is the Corrupt Practice Acts enacted before the turn of the century and defined as a group of persons engaged in raising, collecting or disbursing money for election purposes. Ekern v. McGovern (1913),154 Wis. 157, 288, 142 N.W. 595. The purpose of reporting expenses is to limit disbursements by or on behalf of a candidate and to free him from the temptation of accepting support conditioned upon improper obligations. The requirement does not apply to political acts which do not have for their immediate objective the promotion of the candidacy of a particular person.State ex rel. LaFollette v. Kohler (1930), 200 Wis. 518,228 N.W. 895. Also, our court has said that as broad as the power of the legislature is with respect to regulation of elections, if a statute destroys the right to free speech it is to that extent void. State ex rel. LaFollette v. Kohler, supra, p. 561.
It does not appear to me that a party convention delegate, as such, comes within the meaning or purpose of sec. 15.79, Stats. Generally speaking a delegate represents a geographic area, not a committee, for the purpose of nominating candidates and committees. A political convention is a nominating device. 25 Am.Jur. 2d, Elections, sec. 164. It cannot be equated with a political committee, precisely defined.
If the legislature intended to prohibit a public service commissioner from being a delegate to a convention, an express prohibition could have been enacted similar to Minnesota law. SeeJohnson v. State of Minnesota Civil Service Dept. (1968),280 Minn. 61, 157 N.W.2d 747. It further should be noted that conventions are of short duration in contrast to committee service which may involve political activity for a period of at least two years at the local level to four years at the national level. Committees function not only during election periods, but also between campaigns. (See Wisconsin Blue Book (1968), pages 662 to 668, for detailed discussion of political party organization in Wisconsin.) In connection with the duration of political activity, it is to be observed that the precursor of present sec. 15.79, Stats., intertwined the requirement of full-time service by a public service commissioner with the prohibition against such persons serving on or under a political committee. Sec. 195.01 (4), Stats., 1967. I conclude that the legislative purpose was to prevent a *Page 269 
public service commissioner from engaging only in the specific activity described, i.e., serving on or under a committee of a political party.
Accordingly, I am of the opinion that sec. 15.79, Stats., does not prohibit a public service commissioner from attending a political convention purely as a delegate. However, I would be remiss if I failed to point out that the statute restricts the acceptance of committee duties at such convention to the extent indicated in this opinion. This conclusion assumes that no federal funds are administered by the Public Service Commission so as to invoke the provisions of the Hatch Act.
RWW:WLJ